JAMES F. SPEYER (SBN 133114)
james.speyer@apks.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017
Tel:    (213) 243-4000 / Fax:      (213) 243-4199

MATTHEW D. GRANT (*pro hac vice* application pending*)*
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, New York 10019-9710
Phone:  (212) 836-8000 / Fax:  (212) 836-8689

NORMAN M. LEON
norman.leon@dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL  60606
Tel:    (312) 368-4000

ELLEN BRONCHETTI, Cal. Bar No. 226975
MICHAEL GIAMBONA, Cal. Bar No. 307697
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California  94105-2933
Tel:  415.836.2500 / Fax:  415.836.2501

Attorneys for Defendant 7-Eleven, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| SERGE HAITAYAN, JASPREET DHILLON, ROBERT ELKINS, and MANINDER "PAUL" LOBANA, individually, and on behalf of other similarly situated,<br><br>    Plaintiffs/<br>    Counter-Defendants,<br><br>    v.<br><br>7-ELEVEN, INC., a Texas corporation,<br><br>    Defendant/<br>    Counter-Claimant. | CASE NO.  2:17-cv-7454 JFW (JPRx)<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; SUPPORTING MEMORANDUM**<br><br>Date:    March 5, 2018<br>Time:    1:30 p.m.<br>Dept:    7A<br>Judge:    Honorable John F. Walter<br><br>Pre-Trial Conf:    November 13, 2018<br>Trial:    December 11, 2018 |

1

## NOTICE OF MOTION AND MOTION

2   TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

3         PLEASE TAKE NOTICE THAT on March 5, 2018, at 11:30 a.m., or as soon

4   thereafter as this matter may be heard, in Courtroom 7A of the above-entitled

5   Court, located at 221 West Broadway, San Diego, California, 92101, before the

6   Honorable John F. Walter, defendant 7-Eleven, Inc. will, and hereby does, move

7   the Court for judgment on the pleadings on each and every count in the First

8   Amended Complaint ("FAC") of plaintiffs Serge Haitayan, Jaspreet Dhillon,

9   Robert Elkins and Maninder "Paul" Lobana, pursuant to Federal Rule of Civil

10  Procedure 12(c) on the ground that the FAC fails to state any claim upon which

11  relief can be granted.

12        This motion is based on this notice of motion and motion; the attached

13  memorandum; the pleadings, records, and papers on file in this action; and all other

14  matters properly before this Court.

15

16  Dated:  January 31, 2018          DLA PIPER LLP (US)

17
                                      By: /s/ Norman M. Leon
18                                        NORMAN M. LEON
                                          ELLEN BRONCHETTI
19                                        MICHAEL GIAMBONA
                                          Attorneys for Defendant/
20                                        Counterclaimant 7-ELEVEN, INC.

21

22  Dated:  January 31, 2018          ARNOLD & PORTER KAYE SCHOLER LLP

23
                                      By: /s/ James F. Speyer
24                                        JAMES F. SPEYER
                                          MATTHEW D. GRANT
25                                        Attorneys for Defendant/
                                          Counterclaimant 7-ELEVEN, INC.
26

27

28

# <u>TABLE OF CONTENTS</u>

**Page**

I.   PRELIMINARY STATEMENT ...................................................................... 1

II.   STATEMENT OF FACTS ............................................................................ 3

    A.   7-Eleven and the Nature of the Parties' Franchise Relationship ......... 3

    B.   The Rights and Obligations of 7-Eleven and Its Franchise
        Owners .................................................................................................. 6

    C.   The Plaintiffs and Their Claims ........................................................... 9

III.   ARGUMENT .............................................................................................. 10

    A.   The Standards That Govern This Motion ........................................... 10

    B.   Plaintiffs Cannot Establish That 7-Eleven Exercised The
        Required Amount Of Control Over Their Day-To-Day
        Operations .......................................................................................... 11

        1.   The California Supreme Court Has Made Clear That A
            Franchisor Cannot Be Deemed An Employer Unless It
            Assumes Day-To-Day Control Over Its Franchisees'
            Operations ............................................................................... 12

        2.   California Courts Have Long Recognized That 7-Eleven
            Does Not Exercise The Requisite Degree Of Control Over
            Its Franchisees ....................................................................... 16

    C.   The Secondary Factors Support The Dismissal Of Plaintiffs'
        Complaint ........................................................................................... 18

        1.   The Other FLSA Factors Further Confirm That This Is
            Not An Employment Relationship .......................................... 19

        2.   The Secondary Factors That Courts May Consider
            Confirm That These Are Not Employment Relationships
            Under California Law .............................................................. 21

    D.   Plaintiffs Have Not Stated A Claim Under The UCL ........................ 23

IV.   CONCLUSION .......................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

CASES

*7-Eleven, Inc. v. Karamjeet Sodhi*,
   Civ. Action No. 13-3715 (MAS) (JS), 2016 WL 3085897 (D.N.J.
   May 31, 2016), *aff'd*, 2017 WL 3635189 (3rd Cir. Aug. 24, 2017) ....... 17, 20, 21

*Acosta v. Jani-King of Oklahoma, Inc.*,
   No. CIV-16-1133-W, 2017 WL 3841488 (W.D. Okla. June 9,
   2017) ........................................................................................................... 10

*Adcock v. Chrysler Corp.*,
   166 F.3d 1290 (9th Cir. 1999) ..................................................................... 11

*Albillo v. Intermodal Container Servs., Inc.*,
   114 Cal. App. 4th 190 (2003) ....................................................................... 24

*Aleksick v. 7-Eleven, Inc.*,
   205 Cal. App. 4th 1176 (2012) ..................................................................... 17

*Amrose v. Avis Rent A Car Sys., Inc.*,
   No. 2:11-cv-09992-CAS, 2014 WL 6976114 (C.D. Cal. Dec. 8,
   2014) ............................................................................................................. 14

*Angelo v. Southland Corp.*,
   No. CV0404853185, 2005 WL 2741460 (Conn. Super. Ct. 2005) .................... 18

*Arnold v. Mut. of Omaha Ins. Co.*,
   202 Cal. App. 4th 580 (2011) ....................................................................... 22

*Ayala v. Antelope Valley Newspapers, Inc.*,
   59 Cal. 4th 522 (2014) ........................................................................... 12, 21

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
   289 F.3d 589 (9th Cir. 2002) .......................................................................... 4

*Bornhauser v. Jacksonville Post Closing*,
   CV 15-9994-JFW, 2016 WL 7444965 (C.D. Cal. Mar. 17, 2017) .................... 11

*Chelkova v. Southland Corp.*,
   771 N.E.2d 1100 (Ill. App. Ct. 2002) ........................................................... 18

*Cislaw v. Southland Corp.*,
   4 Cal. App. 4th 1284 (1992) ................................................................... passim

*Cooper v. Yates*,
   No. 1:09-CV-85-AWI-MJS P, 2010 WL 4924748 (E.D. Cal. Nov.
   29, 2010) ......................................................................................................... 6

*Daves v. Southland Corp.*,
   2000 WL 60199 (Wash. App. Ct. 2000) ....................................................... 18

**TABLE OF AUTHORITIES**
(continued)

Page

*DiPilato v. 7-Eleven, Inc.*,
  662 F. Supp. 2d 333 (S.D.N.Y. 2009) ............................................................ 18

*Dugan v. Fedex Corp.*,
  No. CV 02-1234-JFWFMOX, 2002 WL 31305208 (C.D. Cal. Sept.
  27, 2002) .................................................................................................. 10, 11

*Dworkin v. Hustler Magazine, Inc.*,
  867 F.2d 1188 (9th Cir. 1989) ...................................................................... 10

*Dynamex Operations West, Inc. v. Superior Court*,
  182 Cal. Rptr. 3d 644 (2015) ....................................................................... 12

*Farmers Ins. Exch. v. Super. Ct.*,
  2 Cal. 4th 377 (1992) .................................................................................... 24

*Germann v. Workers' Comp. Appeal Bd.*,
  123 Cal. App. 3d 776 (1981) ......................................................................... 22

*Gounev v. Delta Mech., Inc.*,
  No. 13-CV-1857 JLS(JMA), 2015 WL 11658711 (S.D. Cal. July
  24, 2015) ....................................................................................................... 12

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
  896 F.2d 1542 (9th Cir. 1990) ...................................................................... 11

*Hatcher v. Augustus*,
  956 F. Supp. 387 (E.D.N.Y. 1997) .......................................................... 15, 18

*Hy-Brand Indus. Contractors, Ltd.*,
  365 NLRB No. 156 (Dec. 14, 2017) ............................................................... 4

*In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*,
  2011 WL 1399783 (N.D. Cal. Apr. 13, 2011) ............................................... 24

*Jones v. Royal Admin. Servs.*,
  866 F.3d 1100 (9th Cir. 2017) ...................................................................... 11

*Juarez v. Jani-King of Cal., Inc.*,
  No. 09-3495 SC, 2012 WL 177564 (N.D. Cal. Jan. 23, 2012) ................. 22, 23

*Khoury v. Maly's of California, Inc.*,
  14 Cal. App. 4th 612 (1993) ......................................................................... 24

*Martinez v. Combs*,
  49 Cal. 4th 35 (2010) .................................................................................... 12

*Martinez v. Wells Fargo Home Mortg., Inc.*,
  598 F.3d 549 (9th Cir. 2010) ........................................................................ 24

**TABLE OF AUTHORITIES**
(continued)

Page

*McGann v. Ernst & Young,*
  102 F.3d 390 (9th Cir. 1996) .................................................................. 11

*Mission Ins. Co. v. Workers' Comp. Appeal Bd.,*
  123 Cal. App. 3d 221 (1981) ................................................................. 23

*Naik v. 7-Eleven,*
  2014 WL 3844792 (D.N.J. Aug. 5, 2014) ........................................... 19

*Newsom v. Countrywide Home Loans, Inc.,*
  714 F. Supp. 2d 1000 (N.D. Cal. 2010) ............................................... 24

*Patterson v. Domino's Pizza, LLC,*
  60 Cal. 4th 474 (Cal. 2014) ........................................................... passim

*Real v. Driscoll Strawberry Assocs., Inc.,*
  603 F.2d 748 (9th Cir. 1979) ......................................................... 12, 19

*Roman v. Jan-Pro Franchising Int'l, Inc.,*
  No. C 16-05961 WHA, 2017 WL 2265447 (N.D. Cal. May 24,
  2017) ..................................................................................................... 14

*Ruiz v. Affinity Logistics Corp.,*
  754 F.3d 1093 (9th Cir. 2014) .............................................................. 12

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations,*
  48 Cal. 3d 341 (1989) ............................................................. 12, 16, 22

*Simpkins v. 7-Eleven, Inc.,*
  2008 WL 918482 (N.J. App. Div. Apr. 7, 2008) ................................. 18

*Singh v. 7-Eleven, Inc.,*
  No. C-05-04534 RMW, 2007 WL 715488 (N.D. Cal. Mar. 8, 2007)..... 13, 15, 17

*Soares v. Flowers Foods, Inc.,*
  320 F.R.D. 464 (N.D. Cal. 2017) ......................................................... 21

*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001) .................................................................. 6

*Steckman v. Hart Brewing Inc.,*
  143 F.3d 1293 (9th Cir. 1998) ................................................................ 6

*Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.,*
  922 F. Supp. 299 (C.D. Cal. 1996) ...................................................... 11

*Thueson v. U-Haul Intern., Inc.,*
  144 Cal. App. 4th 664 (2006) ................................................................. 5

*Toyota Motor Sales U.S.A. v. Superior Court,*
  220 Cal. App. 3d 864 (1990) ................................................................ 21

**TABLE OF AUTHORITIES**
(continued)

Page

*Ward v. City of Barstow*,
No. EDCV-15-00444-DSF (KES), 2017 WL 4877389 (C.D. Cal.
June 23, 2017).................................................................................................. 6

*Wickham v. Southland Corporation*,
186 Cal. App. 3d 49 (Cal. App. Ct. 1985).................................................... 18

**STATUTES**

15 U.S.C. § 1051, *et seq.* ...................................................................................... 4

15 U.S.C. § 1127 (2000) ....................................................................................... 4

Cal. Bus. & Prof. Code § 17200 ............................................................... 10, 23, 24

Cal. Bus. & Prof. Code § 20009 ............................................................................ 5

Cal. Corp. Code § 31005(a)(1) .............................................................................. 5

Cal. Corp. Code § 31005(a)(1)-(3) ........................................................................ 3

Cal. Fran. Invest. Law § 31005(a) ........................................................................ 5

Cal. Fran. Rel. Act §§ 20020-20021 .................................................................... 21

Cal. Lab. Code § 2802 ......................................................................................... 10

**OTHER AUTHORITIES**

16 C.F.R. § 436.1 *et seq.*...................................................................................... 5

16 C.F.R. § 436.1(h)(1) ........................................................................................ 3

16 C.F.R. § 436.1(h)(2) ........................................................................................ 5

Fed. R. Civ. P. 12(b)(6) .................................................................................. 10, 11

Fed. R. Civ. P. 12(c) ..................................................................................... 10, 11, 24

Fed. R. Evid. 201 ................................................................................................ 11

1 G. Glickman, *Franchising,* §3A.02[4][a] (2009) ............................................... 4

King, *Limiting the Liability of Franchisors for the Torts of Their
Franchisees*, 62 Wash. & Lee L. Rev. 417, 468 (2005)...................................... 4

*Martin v. Southland Corp.*, Bus. Franchise Guide (CCH) ¶11,019,
2009 WL 3956897 (Cal. App. Ct. Sept. 20, 1996)........................................... 17

## I. **PRELIMINARY STATEMENT**

In 2014, the California Supreme Court issued a landmark decision (*Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474 (Cal. 2014)) that specifically addressed the limited circumstances under which a franchisor could be deemed the employer of its franchisees or its franchisees' employees.  Recognizing the "contemporary realities of franchising" and both the practical need and legal obligation of franchisors to "impose[] comprehensive and meticulous standards" over the manner in which their franchisees operate, the Court made clear that employer liability could only attach to a franchisor if it controlled the day-to-day operations of its franchisees.  Plaintiffs' lawsuit – which contends that the controls allegedly exercised by 7-Eleven have suddenly converted these long-time franchise owners into employees under both federal and state law – proceeds as if *Patterson* does not exist.

While 159 paragraphs in length, Plaintiffs' Amended Complaint can be searched in vain for *any* allegation that 7-Eleven ever exercised the day-to-day control *Patterson* held was necessary to support Plaintiffs' claims.  More importantly, *Patterson* addressed the very same sort of "controls" Plaintiffs now claim constitute indicia of an employment relationship and concluded – *as a matter of law* – that, notwithstanding those alleged controls, the plaintiff could not establish that the franchisor was her employer.

But Plaintiffs' allegations do not merely fly in the face of *Patterson*.  They ignore decades of case-law (both from the federal courts and California state courts) that has repeatedly made clear that 7-Eleven does not exercise the type of control that would render it the employer of its franchise owners.  Under both statutes at issue in this case (the Fair Labor Standards Act and the California Labor Code) the crucial question in evaluating whether an individual is an employee or independent contractor is whether the putative employer exercises excessive control over the means and manner of that individual's performance.  In *Cislaw v. Southland Corp.*,

-1-

1    4 Cal. App. 4th 1284 (1992)), the Court considered this exact question and

2    concluded that Southland Corporation (the prior name for 7-Eleven, Inc.) did not

3    exercise such control.  In fact, after addressing the very same allegations raised by

4    Plaintiffs in this case, *Cislaw* concluded – *as a matter of law* – that the terms of 7-

5    Eleven's franchise agreement "expressly gave the franchisees [not 7-Eleven]

6    control over the manner and means of the store's operation …."  Notably, when the

7    *Patterson* Court reviewed the facts of the *Cislaw* case, it concluded that those facts

8    established that 7-Eleven's franchisees "possessed almost *all* operational control."

9    *Patterson*, 60 Cal. 4th at 497 (emphasis added).

10   Because settled case-law makes clear that Plaintiffs cannot establish that 7-

11   Eleven exercises the requisite level of control, Plaintiffs' claims necessarily fail –

12   *as a matter of law*.  However, should this Court decide that a consideration of any

13   other factors is warranted, both existing case-law and the facts of Plaintiffs' own

14   Complaint underscore what *Patterson* and *Cislaw* make clear: that these

15   relationships are not, and never were, employment relationships.  Among other

16   things, Plaintiffs: make significant investments in their franchises; derive revenue

17   based on the profits they generate as a result of the business choices they make;

18   make their own employment decisions; choose their own hours; can sell their

19   businesses; cannot be terminated at will; and clearly intended to enter into

20   independent contractor relationships.  These are not the indicia of an employment

21   relationship.

22   Plaintiffs' remaining claims, which purport to assert claims under

23   California's Unfair Competition Law, merit little mention.  Both claims are

24   premised entirely on Plaintiffs' misguided assertion that 7-Eleven violated both the

25   FLSA and the California Labor Code.  Because Plaintiffs cannot establish the

26   predicate of these claims – *i.e.*, that an employment relationship exists between 7-

27   Eleven and its franchise owners – these claims necessarily fail.

28   /////

For these and the additional reasons set forth below, 7-Eleven respectfully requests that this Court enter judgment in 7-Eleven's favor on each Count of Plaintiffs' Amended Complaint.

## II. <u>STATEMENT OF FACTS</u>

### A.   <u>7-Eleven and the Nature of the Parties' Franchise Relationship</u>

7-Eleven is one of the largest, best-known, and most successful franchise systems in the world.  It has been selling franchises in the United States for more than fifty years.  (Amended Complaint ["Complaint"] ¶ 15.)  Currently, there are more than 7,800 7-Eleven stores operating in the United States, approximately 1,500 of which are franchised to independent business owners in this State.  (*Id*.)  Each of these franchised businesses is granted pursuant to, and governed by, a written franchise agreement.  (*Id*. at ¶ 19.)  Any analysis of the claims raised here must, as a result, take into account the "contemporary realities of franchising."  *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 478 (Cal. 2014).

Franchising is a "heavily regulated" form of business (*Cislaw v. Southland Corp*., 4 Cal. App. 4th 1284, 1288 (1992)), and what constitutes a "franchise" is defined both by a considerable number of states (including California) and by the federal government.  While there are some variations in the definitions at the state level, all of them share at least one comment element: the requirement that the franchisee's business be identified, or substantially associated, with the franchisor's trademark.  *See, for example,* Cal. Corp. Code § 31005(a)(1)-(3) (defining a franchise in part as a contract under which "[t]he operation of the franchisee's business … is substantially associated with the franchisor's trademark").[1]  In this

---

[1]     The Federal Trade Commission ("F.T.C."), which regulates the sale of franchises in the United States, likewise defines a "franchise" in part as "any continuing commercial relationship or arrangement" whereby the franchisor promises that the franchisee "will obtain the right to operate a business that is identified or associated with the franchisor's trademark, or to offer, sell, or distribute goods, services, or commodities that are identified or associated with the franchisor's trademark."  16 C.F.R. § 436.1(h)(1).

1   way, "one important aspect of the franchising relationship is the franchisee's ability
2   to reap the benefits of manifesting to the customer the appearance of a seamless
3   enterprise through the use and maintenance of the franchisor's trademark." *Hy-*
4   *Brand Indus. Contractors, Ltd.*, 365 NLRB No. 156, at 28 (Dec. 14, 2017).

5         The substantial association that exists between a franchisor's trademarks and
6   a franchised business requires that franchisors exercise some control over the
7   quality and operational standards their franchise owners implement in distributing
8   goods or services under those marks. *Patterson*, 60 Cal. 4th at 489-90; *see also*
9   King, *Limiting the Liability of Franchisors for the Torts of Their Franchisees*, 62
10   Wash. & Lee L. Rev. 417, 468 (2005) ("Franchising depends on the use of a shared
11   trademark, the value of which is sustained by controlling the uniformity and quality
12   of the products and services marketed under the trademark."). In fact, federal
13   trademark law (15 U.S.C. § 1051, *et seq.*) *requires* that trademark owners maintain
14   control over the use of their trademarks. *See* 15 U.S.C. § 1127 (2000). "A
15   trademark owner, in order to retain a right to a mark, must retain sufficient control
16   over the licensees' dealings in the end product to insure that they will apply the
17   mark to either the same product or to one of substantially the same quality with
18   which the public in the past has associated the product." 1 G. Glickman,
19   *Franchising,* §3A.02[4][a] (2009); *accord Barcamerica Int'l USA Trust v. Tyfield*
20   *Importers, Inc.*, 289 F.3d 589, 598 (9th Cir. 2002) (the right to license others to
21   operate under trademarks is based on ensuring that "all licensed outlets will be
22   consistent and predictable"). "If a franchisor fails to maintain sufficient control
23   over its marks, it is considered to have engaged in 'naked licensing' and thereby to
24   have abandoned [its] mark." *Hy-Brand*, 365 NLRB No. 156, at 28 (Dec. 14, 2017)
25   (holding that "[t]he necessity of the franchisor to police the 'manner and method' of
26   the franchisee is paramount").

27         The high degree of consistency that is a hallmark of franchised businesses is
28   not merely a function of the trademark laws – it is part of the very definition of

-4-

franchising.  In the rule that governs the disclosures that must be made before a franchise can be sold (16 C.F.R. § 436.1 *et seq*.), the F.T.C. defines a "franchise" as "any continuing commercial relationship" whereby a franchisee distributes goods or services under the franchisor's trademarks and "[t]he franchisor will exert or has authority to exert *a significant degree of control* over the franchisee's method of operation …."  16 C.F.R. § 436.1(h)(2) (emphasis added).  California law is no different.  Under Section 31005(a) of the California Franchise Investment Law ("CFIL"), a franchise is defined, in part, as a contract or agreement under which "[a] franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services *under a marketing plan or system prescribed in substantial part* by a franchisor."  Cal. Corp. Code § 31005(a)(1) (emphasis added).

The Commissioner of the California Department of Business Oversight, who is charged with the interpretation and enforcement of the CFIL, has issued a release which explains and underscores how comprehensive a franchisor's system may be.[2] In Commissioner's Release 3-F (entitled "When Does an Agreement Constitute A 'Franchise'"), the Commissioner noted that the following factors were significant in determining the existence of a marketing plan and, therefore, constituted indicia of a franchise relationship:

> Control reserved over terms of payment by customers, credit practices, warranties and representations in dealings between franchisees and their customers, suggest a uniform marketing plan. Provisions concerning collateral services, which may or may not be rendered, or prohibiting or limiting the sale of competitive or non-competitive goods are consistent with, though certainly not in and of themselves determinative of, a prescribed marketing plan. Significance attaches to provisions imposing a duty of observing the licensor's directions or

---

[2]    Section 20009 of the Business and Professions Code states that the "regulations, releases, guidelines and interpretive opinions of the Commissioner of Corporations under the Franchise Investment Law … regarding whether or not an agreement constitutes a 'franchise' within the meaning of that law shall be prima facie evidence of the scope and extent of coverage of the definition of 'franchise' under this chapter."  "While the responsibility for statutory interpretation ultimately rests with the court, the Guidelines, as interpretation of a statute by the officials charged with its administration, are entitled to great weight."  *Thueson v. U-Haul Intern., Inc.*, 144 Cal. App. 4th 664, 671 (2006).

obtaining the licensor's approval with respect to the selection of locations, the use of trade names, advertising, signs, sales pitches, and sources of supply, or concerning the appearance of the Licensee's business premises and the fixtures and equipment utilized therein, uniforms of employees, hours of operation, housekeeping, and similar decorations.

The implementation of these and other similar directions by procedures for inspection by, and reporting to, the franchisor with respect to the conduct of the franchised business, and the right of the franchisor to take corrective measures, possibly at the expense of the franchisees, are indicative of the franchisor's control over the franchisees' operations and, consequently, of a marketing plan prescribed by the franchisor.

Commissioner's Release 3-F: When Does an Agreement Constitute a "Franchise", at ¶ 2.2.3.

**B.** **The Rights and Obligations of 7-Eleven and Its Franchise Owners**[3]

As noted above, like other franchised systems, the relationship between 7-Eleven and a franchise owner is governed by a franchise agreement.[4] By that agreement, 7-Eleven leases property and equipment to a franchise owner and grants that franchise owner a license to use 7-Eleven's trademarks and operating system. (Franchise Agreement, Doc. 24-1, at ¶¶ 7-8.) The franchise owner, in turn, agrees to use those leased and licensed materials to operate a 7-Eleven retail store, to comply with all applicable laws and regulations, and

---

[3] The following facts are taken from the Franchise Agreement that Plaintiffs attached to their Complaint. In several places, Plaintiffs make allegations about the parties' rights and obligations that contradict the terms of the Franchise Agreement. Any such allegations are not taken as true and should be disregarded. A court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint" or documents that are proper subjects of judicial notice. *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998); *accord Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Ward v. City of Barstow*, No. EDCV-15-00444-DSF (KES), 2017 WL 4877389, at *4 (C.D. Cal. June 23, 2017) ("when documents contain statements that contradict allegations in a complaint, the documents control"); *Cooper v. Yates*, No. 1:09-CV-85-AWI-MJS P, 2010 WL 4924748, at *3 (E.D. Cal. Nov. 29, 2010) ("The Court may, and does here, disregard factual allegations contradicted by facts established by reference to exhibits attached to the complaint").

[4] A copy of one such Franchise Agreement is annexed to Plaintiffs' Complaint as Exhibit A. (Doc. 24-1 at pp. 4-41.) All references to Paragraphs in this Motion are to Paragraphs in that Franchise Agreement.

(a) to hold [him or her]self out to the public as an independent contractor; (b) to control the manner and means of the operation of the Store; and (c) to exercise complete control over and responsibility for all labor relations and the conduct of [his or her] agents and employees, including the day-to-day operations of the Store and all Store employees.

(*Id*. at ¶ 2.)  The franchise agreement makes clear that 7-Eleven will not "exercise any discretion or control over [the franchise owner's] employment policies or employment decisions," and that the franchise owner "will control the manner and means of the operation of the Store."  (*Id*.)

In contrast to an employment relationship (where an employer pays an employee for services provided), 7-Eleven does not pay its franchise owners anything.  Rather, the franchise owners pay 7-Eleven certain fees, including a charge called the 7-Eleven Charge, which is typically 50% of the gross profits of the store.  (*Id*. at ¶ 10(a).)  Assuming the franchise owner maintains the minimum Net Worth set forth in the franchise agreement (usually $15,000), he or she is entitled to all of the gross profit of the business that remains after paying the 7-Eleven Charge and store expenses (*e.g.*, payroll, maintenance and advertising fees, supplies, etc.), all of which are the franchise owner's responsibility.  (*Id*. at ¶¶ 28 and 11.)

7-Eleven provides its franchise owners with assistance to aid them in maximizing their profits.  For example, all franchise owners attend an initial training session at 7-Eleven headquarters, where they learn about the 7-Eleven system and the equipment they and their employees will use in operating the stores.  (*Id*. at ¶ 4(a).)  Franchise owners, in turn, are responsible for training their own employees.  (*Id*. at ¶ 4(c).)  7-Eleven also offers periodic training in certain circumstances (such as when new products, systems or equipment are launched) and ongoing field support.  (*Id*. at ¶ 4(b).)  The field support is provided by a 7-Eleven Field Consultant, who visits franchise owners to coach and work with them

/////

1  to identify opportunities for increased sales and operational improvements.  (*Id*. at

2  ¶ 1(a)(4).)

3       As it concerns the daily operations of a franchised business, the decisions

4  necessary to operating that business are largely left to the discretion of the franchise

5  owner.  Like other franchise systems, 7-Eleven provides its franchise owners with

6  an Operations Manual, which contains various recommendations and best practices

7  concerning the operation of 7-Eleven stores.  (*Id*. at ¶ 4(d).)  While franchise

8  owners are encouraged to follow the advice of their Field Consultant and the

9  procedures outlined in the Operations Manual, with very limited exceptions (such

10  as those relating to food safety) they are not required to do so.  (*Id*. at ¶¶ 4(d),

11  16(b).)

12       This general autonomy carries over into the manner in which franchise

13  owners purchase and price the products they sell.  To maintain a degree of

14  uniformity and meet consumer expectations, franchise owners agree to carry and

15  sell certain Proprietary Products (*e.g*., Slurpees® and Big Gulps®), a reasonable

16  and representative quantity of products that are either the subject of national or

17  regional promotions or exclusive to 7-Eleven, and products that are consistent with

18  the type, quality and variety associated with the 7-Eleven brand.  (*Id*. at ¶¶ 15(b),

19  (c).)  The franchise agreement, however, does not include any other specifications

20  regarding the products that will be carried and sold or the amount of products

21  franchise owners must carry in their stores.  Nor does it include any controls

22  regarding the prices at which those products will be offered to consumers.  To the

23  contrary, the franchise agreement specifically states that, as long as 7-Eleven is kept

24  informed about the prices being charged, franchise owners "have no obligation" to

25  sell products at 7-Eleven's suggested retail prices.  (*Id*. at ¶ 15(f).)  Similarly, aside

26  from their obligation to purchase products from approved suppliers (*id*. at ¶ 15(g)),

27  /////

28  /////

1  franchise owners may purchase the products they choose to stock their stores with

2  from whatever source they wish.[5]

3      Finally, franchise owners retain control over the length of their business

4  relationship with 7-Eleven.  While a franchise agreement has a term of 15 years (*id.*

5  at ¶ 9), a franchise owner has the right to terminate his or her franchise agreement

6  merely by giving seventy-two hours written notice to 7-Eleven.  (*Id.* at ¶ 27)  Cause

7  is not required.  (*Id.*)  At the end of the parties' relationship – whether by the

8  franchise owner's choice or upon the sale of the franchise – the franchise owner

9  retains the equity he or she has built up, less any indebtedness then owed to 7-

10  Eleven.  (*Id.* at ¶ 28.)

11      **C.    The Plaintiffs and Their Claims**

12      This action was filed on October 12, 2017 by five current franchise owners of

13  7-Eleven, all of whom have been franchise owners since at least 2004.  (Doc. 1 at

14  ¶ 19.)  Despite reaping the benefits of their franchise relationships for the past 13

15  years, Plaintiff now claim that, because of the controls allegedly exercised by 7-

16  Eleven, they have been "misclassified" as independent contractors and are entitled

17  to damages under both the Fair Labor Standards Act ("FLSA") and the California

18  Labor Code.  (Doc. 1.)[6]  An Amended Complaint ("Complaint") asserting

19

20  _____

[5]    In an effort to obtain volume discounts for the benefit of the entire system, 7-Eleven has established relationships with certain product vendors, which the franchise agreement refers to as Recommended Vendors.  (*Id.* at ¶ 15(g).)  7-Eleven negotiates the prices at which those Recommended Vendors will sell products to 7-Eleven stores and agrees to make a commercially reasonable effort to obtain the lowest cost for those products.  (*Id.* at ¶ 15(j).)  Franchise owners, however, have no obligation to purchase from these Recommended Vendors.  If a franchise owner purchases less than 85% of their store inventory from Recommended Vendors, that owner pays a slightly higher 7-Eleven Charge.  (*Id.* at ¶ 15(g).)

[6]    At this point in the proceeding, 7-Eleven is constrained to accept Plaintiffs' allegations as true.  However, should any of these claims survive this motion, 7-Eleven will show that this action was brought only because the 7-Eleven franchisee association – The National Coalition of Associations of 7-Eleven Franchisees, which has filed a Notice that it is an Interested Party in this suit (*see* Doc. 4) – thought the suit would be leverage to help it negotiate the terms of the franchise agreement that the Complaint acknowledges will come into effect in 2019 and will impact "the vast majority" of 7-Eleven's franchise owners. (Complaint ¶ 18.)

substantially the same allegations but omitting one of the original plaintiffs was filed on November 1, 2017.  (Doc. 24.)  Each Count in the Complaint hinges on Plaintiffs' assertion that, notwithstanding the fact that they own and operate franchises and have their own employees, they should be classified as employees under federal and state law.  Counts I and II of the Complaint assert that Plaintiffs were denied overtime compensation under the FLSA and the California Labor Code, respectively; Counts III and IV claim that 7-Eleven failed to indemnify Plaintiffs for certain employment expenses and losses (as allegedly required under California Labor Code Section 2802) and to provide and maintain uniforms and equipment arising out of employment, also as allegedly required by California law; and Counts V and VI asserts violations of the UCL based on 7-Eleven's alleged violations of the FLSA and California's Labor Code.  Styled as a putative class action, the Complaint purports to have been brought on behalf of all 7-Eleven franchise owners operating in this State during the applicable statutory periods.[7]

## III. <u>ARGUMENT</u>

### A.  <u>The Standards That Govern This Motion</u>

A motion for judgment on the pleadings "is 'functionally identical' to a motion to dismiss for failure to state a claim; the only significant difference is that a 12(c) motion is properly brought 'after the pleadings are closed and within such time as not to delay the trial.'"  *Dugan v. Fedex Corp.*, No. CV 02-1234-JFWFMOX, 2002 WL 31305208, at *1 (C.D. Cal. Sept. 27, 2002) (quoting *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) and Fed. R. Civ. P. 12(c)) (Walter, J.).  As with a motion to dismiss under Rule 12(b)(6), a

---

[7]  One of the named Plaintiffs (Paul Lobana) owns one franchise individually and one through his corporation, Lobana Corporation. (Complaint ¶5.) Entities are not considered employees under the FLSA, which defines "employees" as individuals. *See, e.g., Acosta v. Jani-King of Oklahoma, Inc.*, No. CIV-16-1133-W, 2017 WL 3841488 (W.D. Okla. June 9, 2017) (dismissing claim for violation of the FLSA for this reason).  The parties are presently discussing a stipulation that acknowledges that Mr. Lobana is not bringing any claims based on the franchise owed by Lobana Corporation.

Court considering a Rule 12(c) motion "must assume the truthfulness of all material facts alleged and construe all inferences reasonably to be drawn from the facts in favor of the responding party." *Dugan*, 2001 WL 31305208, at *1. "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996).[8] "The Court may grant judgment on the pleadings 'when, taking all allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Dugan*, 2002 WL 31305208, at *1 (quoting *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996)).

### B.   Plaintiffs Cannot Establish That 7-Eleven Exercised The Required Amount Of Control Over Their Day-To-Day Operations

Plaintiffs' Complaint purports to set forth six (6) causes of action.  Each count hinges on the assertion that Plaintiffs are employees under the FLSA or the California Labor Code.  While the factors that Courts consider in evaluating claims under these statutes differ slightly (*see* Section III, *infra*), the crucial question under both statutes is the same: does the putative employer exercise excessive control over the alleged worker's performance?  *See Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999) (the "primary factor" is "the extent of the employer's right to control the means and manner of the worker's performance"); *see also Jones v. Royal Admin. Servs.*, 866 F.3d 1100 (9th Cir. 2017) ("extent of control

---

[8]   "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). "However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment." *Bornhauser v. Jacksonville Post Closing*, CV 15-9994-JFW (KSx), 2016 WL 7444965, at *2 (C.D. Cal. Mar. 17, 2017) (citing *Hal Roach*) (Walters, J.).  Plaintiffs have attached to their Complaint a franchise agreement that they contend is "identical to, or substantially similar to" the franchise agreements between 7-Eleven and all of the named plaintiffs in this suit.  (Complaint ¶ 19.)  Therefore, the terms of that agreement are properly considered on this motion.

exercised by the [principal] is the 'essential ingredient'" in determining whether an individual is an agent or an independent contractor); *Gounev v. Delta Mech., Inc.*, No. 13-CV-1857 JLS(JMA), 2015 WL 11658711, at *7 (S.D. Cal. July 24, 2015) (whether the defendant had the right to control the worker was "[t]he central question to be resolved"); *Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 100 (9th Cir. 2014) (under California's test "the right to control work details is the most important or most significant consideration"); *accord S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989). In light of the principles that govern in this case, Plaintiffs have not alleged and cannot allege the facts required to make this showing.

### 1. The California Supreme Court Has Made Clear That A Franchisor Cannot Be Deemed An Employer Unless It Assumes Day-To-Day Control Over Its Franchisees' Operations

In an ordinary case, an assessment of the level of control exercised by a putative employer hinges on whether that entity "has the right to control the manner and means of accomplishing the result desired." *Borello*, 48 Cal. 3d at 350; *see also Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). In *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474 (2014), the California Supreme Court made clear that a different approach was required in cases involving franchise relationships.[9]

---

[9] Plaintiffs may argue that in lieu of *Patterson* and the long-standing, multi-factor test articulated in *Borello*, this Court should apply the earlier test articulated in *Martinez v. Combs,* 49 Cal. 4th 35 (2010). While that issue is currently before the California Supreme Court (*Dynamex Operations West, Inc. v. Superior Court*, 182 Cal. Rptr. 3d 644 (2015), S222732), 7-Eleven submits that there is no basis for applying *Martinez* in this case. The tests applied in *Martinez*, which were created in the early 20th century, apply in situations where there is *no dispute* that the individuals in question are employees and the sole question is who is their employer. The *Martinez* tests were never intended to apply to cases where, as here, there *is* a dispute as to whether the individuals in question are employees in the first place. *See also Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (2014) (applying the "common-law framework" to a variety of wage and hour claims and leaving "for another day the question what application, if any, the wage order tests for employee status might have").

1    In *Patterson*, an employee of a Domino's franchisee who claimed she had

2  been sexually harassed by the franchisee's assistant manager sued both the

3  franchisee and the franchisor for violations of California's Fair Employment and

4  Housing Act ("FEHA").  As with claims under the FLSA and the California Labor

5  Code, "the existence of 'an employment relationship'" is a prerequisite to a FEHA

6  claim.  *Id*. at 499; *see also Singh v. 7-Eleven, Inc.*, No. C-05-04534 RMW, 2007

7  WL 715488, at *6 (N.D. Cal. Mar. 8, 2007) (whether an employment relationship

8  existed between plaintiffs and 7-Eleven was the "dispositive issue" under both the

9  FLSA and the California Labor Code).  Therefore, to prevail, the plaintiff needed to

10  establish that Domino's (the franchisor) was the employer of the alleged harasser.

11  *Id*.  The California Supreme Court held that, notwithstanding the extensive controls

12  which she alleged Domino's exercised over the franchisee's operations, the plaintiff

13  could not do that – *as a matter of law*.

14    The Court first noted that any analysis of the controls exercised by Domino's

15  needed to accommodate the "contemporary realities of franchising."  *Id*. at 478.   In

16  light of the "massive growth" that franchising had seen, the Court observed that

17  franchisors could have thousands of stores located far apart.  *Id*.  Because of this, a

18  franchisor needs to have the freedom to "impose[] comprehensive and meticulous

19  standards for marketing its trademarked brand and operating its franchises in a

20  uniform way."  *Id.*; *see also id.* at 497 (a franchisor's "comprehensive operating

21  system" cannot transform it into the employer of its franchisees).   The Court

22  recognized that, in this way, a "franchisor controls the enterprise" (*i.e.*, the

23  franchise).   *Id*.  In fact, the Court specifically noted that a franchisor's operating

24  system, which "can take the form of printed manuals, training programs,

25  advertising services, and managerial support, among other things," requires a

26  franchisee to follow "[a] long list of marketing, production, operational, and

27  administrative areas …."   *Id*. at 489-90.  The Court nonetheless held that these

28  types of controls were **not** sufficient to establish an employment relationship, as

-13-

"the franchisee retains autonomy as a manager and employer." *Id*. at 478.  As the Court observed, "it is the franchisee who implements the [franchisor's] operational standards on a day-to-day basis, hires and fires store employees, and regulates workplace behavior." *Id*.  Therefore, liability could only attach if the franchisor "enters th[e] arena' of overseeing the day-to-day operations of the franchisee. *Id*. at 498; *see also Roman v. Jan-Pro Franchising Int'l, Inc.*, No. C 16-05961 WHA, 2017 WL 2265447, at **2-3 (N.D. Cal. May 24, 2017) (applying this standard in rejecting claim that franchisees had been misclassified); *cf. Amrose v. Avis Rent A Car Sys., Inc.*, No. 2:11-cv-09992-CAS (AGRx), 2014 WL 6976114, at **6-7 (C.D. Cal. Dec. 8, 2014) (noting the applicability of the *Patterson* standard to a misclassification claim but declining to apply it because the plaintiffs were not franchisees).

Despite the length of their Complaint, nowhere do Plaintiffs allege that 7-Eleven ever engaged in the day-to-day control *Patterson* held was necessary to sustain their claims.  Plaintiffs complain that the following constitute indicia of 7-Eleven's control over their operations: the initial and ongoing fees they are required to pay (Complaint ¶¶ 22-23); 7-Eleven's retention of a security interest in inventory and limitations on withdrawals from the party's shared bank account (*id*. at ¶¶ 24-30); the requirement that they undergo training (without pay) before they can become a franchise owner (*id*. at ¶ 31); that stores must operate during set hours (*id*. at ¶¶ 32-33); that 7-Eleven controls the location and layout of the stores (*id*. at ¶¶ 43-45) and the types of and sources for products sold within the stores (*id*. at ¶¶ 39-42); that store employees must wear branded apparel (*id*. at ¶ 72); that stores can only be operated as 7-Eleven stores (*id*. at ¶ 49); that franchise owners must comply with 7-Eleven's operating standards, including those that govern the preparation and service of food within their stores (*id*. at ¶¶ 50-52, 61-76); that 7-Eleven has the right to inspect stores to enforce compliance with those standards

/////

1   (*id.* at ¶ 77); and that 7-Eleven processes payroll for the franchise owners'
2   employees (*id.* at ¶ 86).

3       Even if true, **none** of that constitutes the day-to-day control over a franchise
4   owner's operations that *Patterson* made clear was necessary to find an employment
5   relationship.   To the contrary, with the exception of 7-Eleven's retention of a
6   security interest, the parties' use of an open, shared bank account, and the
7   processing of payroll, *Patterson* noted that the very things Plaintiffs complain about
8   are features of typical franchise systems.  *See Patterson*, 60 Cal. 4th at 482, 489 &
9   n.2  (observing that franchisees pay initial fees and royalties, must follow the
10  franchisor's standards and procedures, which typically include a long list of
11  marketing, production, operations and administrative processes, and noting that
12  Domino's required franchisees to undergo training as a condition of operating their
13  stores, supplied training materials franchisees could use for their own employees,
14  and mandated the use of a "comprehensive sales and accounting program" that
15  Domino's could access at any time).[10]  Indeed, *Patterson* specifically noted that the
16  goal in franchising – "which benefits both parties to the contract – is to build and
17  keep customer trust by ensuring consistency and uniformity in the quality of goods
18  and services, the dress of franchise employees, and the design of the stores
19  themselves." *Patterson*, 60 Cal. 4th at 490.
20  /////

21

---

22  [10]     With respect to the processing of payroll, the courts have consistently
    recognized that offering this service does not create an employment relationship
23  between 7-Eleven and its franchise owners or their employees.  *See, e.g.*, *Hatcher v.
    Augustus*, 956 F. Supp. 387, 392 (E.D.N.Y. 1997) ("The fact that Southland
24  provided a payroll service to [the franchisee] for paying the employees of the
    [store] does not in any manner create an indicia of control over labor relations"
25  sufficient to create an employment relationship under Title VII); *Singh v. 7-Eleven,
    Inc.*, No. C-05-04534 RMW, 2007 WL 715488, at *6 (N.D. Cal. Mar. 8, 2007)
26  (processing payroll does not create employment relationship; "[a]lthough 7-Eleven
    generates paychecks, this is merely a convenience for the franchisees such as
27  Duong, who provided all relevant wage and tax information").  7-Eleven is not
    aware of any case which holds that being a secured lender, or limiting withdrawals
28  from a shared account, constitutes indicia of an employment relationship.

2.  **California Courts Have Long Recognized That 7-Eleven Does Not Exercise The Requisite Degree Of Control Over Its Franchisees**

This Court need not rely solely on *Patterson* to conclude that Plaintiffs' claims fall short of the mark.  In fact, consistent with the underpinnings of the franchise business model and the fact that the exercise of controls is an indispensable part of that model, the courts that have considered the relationship that 7-Eleven has with its franchise owners have consistently concluded – *as a matter of law* – that 7-Eleven does not control the means and manner in which its franchisees operate their franchises.

In *Cislaw v. Southland Corp.*, for example, the parents of a teenage boy who died after using clove cigarettes bought at a franchised 7-Eleven store sued Southland Corporation claiming that it was vicariously liable for their son's death. 4 Cal. App. 4th 1284 (1992).  As a result, the question before the *Cislaw* court was the very same one that lies at the heart of all of Plaintiffs' claims: did the franchisor have "the all-important right to control the means and manner in which the [franchisees] achieved the result."  *Id.* at 1295; *cf. Borello*, 48 Cal. 3d at 350 ("[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired").  Echoing the very same allegations raised by Plaintiffs in this case, *Cislaw* described the parties' relationship as follows:

> Under the agreement, the franchisees are given the right to use the 7-Eleven system, trade name and service mark and are required to comply with certain standards.  Boiled down to its essence, the agreement obligates the 7-Eleven store owners/franchisees to complete an operations training program, keep the store and its surroundings clean and maintain the equipment in good repair, carry an inventory of a "type, quality, quantity and variety" consistent with the 7-Eleven image, operate the store from 7 a.m. to 11 p.m., 364 days a year, make daily deposits of all receipts into a designated account, provide Southland with copies of purchase and sales records, make the books available for inspection during normal business hours and pay a percentage fee based on receipts from sales less cost of goods sold.

/////

*Cislaw*, 4 Cal. App. 4th at 1294.  After noting that the question before it was whether these facts created a triable issue of fact as to Southland's right to control the means and manner of the franchisee's operations, the appellate court tersely noted "We think not."  *Id*. at 1295.  The franchise agreement, the Court held, "expressly gave the franchisees control over the manner and means of the store's operation, including the sole right to make employment decisions."  *Id*.  "The evidence leads to the compelling conclusion that Southland did not control the means and manner."  *Id*.  In fact, when the *Patterson* Court reviewed the *Cislaw* case and these same allegations of control, it characterized the relationship between 7-Eleven and its franchise owners as the converse of one in which the franchisor exercises too much control, stating that the 7-Eleven franchise owner in *Cislaw* "**possessed almost *all* operational control**."  *Patterson*, 60 Cal. 4th at 497 (emphases added).

Cislaw hardly stands alone.  The California state courts and the federal courts in this jurisdiction and elsewhere have uniformly rejected the assertion that 7-Eleven controls the means and manner of its franchisees' operations.  *See*, *e.g.*, *7-Eleven, Inc. v. Karamjeet Sodhi*, Civ. Action No. 13-3715 (MAS) (JS), 2016 WL 3085897, at *7 (D.N.J. May 31, 2016) (holding that franchisees' counterclaim that he should be classified as an employee for purposes of the FLSA failed as a matter of law), *aff'd*, 2017 WL 3635189 (3rd Cir. Aug. 24, 2017); *Singh v. 7-Eleven, Inc.*, 2007 WL 715488, at *7 (rejecting the claim that the franchisee's "right to run the operation is illusory" and holding that there was "no evidence" which supported the plaintiffs' assertion that 7-Eleven "retain[ed] complete or substantial control over the daily activities of the franchisee's business"); *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1187-89 (2012) (rejecting as a matter of law the claim that 7-Eleven had control over franchisees' employees); *Martin v. Southland Corp.*, Bus. Franchise Guide (CCH) ¶11,019, 2009 WL 3956897 (Cal. App. Ct. Sept. 20, 1996) (holding as a matter of law that "Southland did not exercise, nor have the right to

-17-

exercise, sufficient control over [the franchisee's] operation of her 7-Eleven store such that [the franchisee] became Southland's agent rather than an independent contractor"); *Wickham v. Southland Corporation*, 186 Cal. App. 3d 49 (Cal. App. Ct. 1985) (affirming summary judgment determination that alleged controls did not create principal-agent relationship between franchisor and franchisee).[11]

There is no reason for this Court to reach a different conclusion in this case. As noted above, to establish an employment relationship under either the FLSA or the California Labor Code, Plaintiffs must show that 7-Eleven controls the manner and means of their operations on a day-to-day basis. Every case to address this exact question makes clear they cannot make this showing. Because the required indicia of control simply does not exist, there is no reason to allow this misguided effort to nullify long-settled franchise relationships to continue beyond the pleading stage. Judgment should be entered in favor of 7-Eleven on each count in Plaintiffs' Complaint.

## C.   The Secondary Factors Support The Dismissal Of Plaintiffs' Complaint

Because Plaintiffs are unable to show the control required to prove any employment relationship, this Court does not need to engage in any further analysis. However, in the event the Court deems it necessary to consider the other

---

[11]   *See also Angelo v. Southland Corp.*, No. CV0404853185, 2005 WL 2741460, at *6 (Conn. Super. Ct. 2005) (granting summary judgment in vicarious liability case and holding that the "manual and the agreement that reference it do not envisage that Southland or its agents would directly oversee, manage, or direct day-to-day maintenance of the store"); *Chelkova v. Southland Corp.*, 771 N.E.2d 1100 (Ill. App. Ct. 2002); *Daves v. Southland Corp.*, 2000 WL 60199, at *1 (Wash. App. Ct. 2000); *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 347-48 (S.D.N.Y. 2009) (granting summary judgment and holding that "[b]ecause the relationship of 7–Eleven franchisees to 7–Eleven is that of an independent contractor plaintiff cannot be an employee for the purposes of Title VII or the ADEA"); *Hatcher*, 956 F. Supp. at 393 (7-Eleven was not the "employer" of a franchisee's employee for purposes of Title VII; "Southland's only relationship to [the plaintiff] is that it licenses a franchise to the plaintiff's employer); *Simpkins v. 7-Eleven, Inc.*, 2008 WL 918482, at **7-8 (N.J. App. Div. Apr. 7, 2008) (granting summary judgment because plaintiff had not shown that 7-Eleven exhibited sufficient control over its franchisee to render it vicariously liable for plaintiff's injuries).

-18-

factors that courts may consider, those factors only underscore the propriety of entering judgment in favor of 7-Eleven.

### 1. The Other FLSA Factors Further Confirm That This Is Not An Employment Relationship

To determine whether an individual is an employee or independent contractor under the FLSA, courts in this Circuit apply an economic reality test: "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) (emphasis omitted). Courts may consider the following factors in applying this test:

> "1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; and 6) whether the service rendered is an integral part of the alleged employer's business."

*Id*. at 754. In this case, each of these factors confirms that the relationships at issue have none of the attributes of an employment relationship.[12]

First, as noted above, Plaintiff cannot establish the requisite level of control over the manner and means by which they operate their franchises. Second, there can be no serious question that a franchise owner's managerial skill impacts his opportunity for profit. Franchisees share in the gross profits their stores generate. (Franchise Agreement, Doc. 24-1, at ¶¶ 10(a).) Further, franchise owners are solely

---

[12] In *Naik v. 7-Eleven*, 2014 WL 3844792 (D.N.J. Aug. 5, 2014) a New Jersey district court denied a motion to dismiss an FLSA claim despite finding that at least three of the six factors weighed against finding an employment relationship. While 7-Eleven respectfully submits that *Naik* arrived at the wrong conclusion, *Naik* is distinguishable for several reasons. Not only did *Naik* rely on allegations that are not made here in concluding that the plaintiffs had pled facts which could show control over the manner and means, but the federal and state courts in this State have consistently held that the elements of "control" that *Naik* relied on (such as processing payroll and requiring the wearing of uniforms) do **not** constitute control over the manner and means of franchise owners' operations.

responsible for determining the product mix in their stores, the prices they charge for the products they choose to carry, and how they staff their stores. *See Sodhi*, 2016 WL 3085897, at *6 (concluding that this factor weighed against finding that a 7-Eleven franchise owner was an employee).  With respect to the third factor (investment in the undertaking), Plaintiffs allege that they pay an initial franchisee, a $20,000 down payment for a portion of their initial inventory, governmental fees for licenses and permits, a "cash register fund," an advertising fee, and an ongoing portion of the gross profits their stores generate. (Complaint ¶¶ 23-24.) Therefore, this factor also weighs against finding an employment relationship. *Sodhi*, 2016 WL 3085897, at *6 (holding that this factor weighed against finding an employment relationship given the significant investment a franchisee makes in acquiring and operating his business).

The fourth factor – whether the services rendered requires a special skill – likewise weighs against any argument that Plaintiffs are employees. While Plaintiffs attempt to minimize the importance of their skills, they concede that the operation of their stores requires the use of both "managerial skills" (with respect to employment practices and pricing products) and "people skills." (Complaint ¶¶ 89, 92.)  Further, Plaintiffs' Complaint admits that at least two of the franchise owners have, through their efforts, become owners of multiple 7-Eleven stores. (*Id*. at ¶¶ 4-5.). *See Sodhi*, 2016 WL 3085897, at *6 (holding that this factor weighed against a finding that the franchise owner had been misclassified because he used the earnings from one store to invest in additional 7-Eleven stores).

As to the degree of permanence of the parties' relationship, while Plaintiffs claim that the parties' are locked into a multi-year relationship (Complaint ¶ 93), the Franchise Agreement makes clear that franchise owners have the right to terminate their relationship with 7-Eleven without cause on 72 hours' notice. (*See* Franchise Agreement, Doc. 24-1, at p. 35. ¶ 27(b)(1).)  7-Eleven, in contrast, can only terminate the agreement in the event the franchise owner commits specified

-20-

breaches and, in those instances, subject to the notice requirements and substantive limitations imposed by both the Franchise Agreement and Sections 20020-20021 of the California Franchise Relations Act, which delineate the limited circumstances under which a franchise in this State can be terminated.  Cal. Bus. & Prof. Code §§ 20020-20021.   The fact that 7-Eleven cannot terminate a franchisee without cause is a strong indicator that this is not an employment relationship.  *See Ayala*, 59 Cal. 4th at 531; *Sodhi*, 2016 WL 3085897, at *6 (holding that this factor weighed against finding an employment relationship for these reasons).

Finally, the last factor is neutral at best.  While the services performed by all franchise owners collectively "are indisputably integral to 7-Eleven's business," a single franchise owner (or group of franchise owners) "could individually be terminated without apparent negative effect to the franchisor."  *See Sodhi*, 2016 WL 3085897, at *6 (concluding this factor was neutral for this reason).

In sum, at least five of the six factors weigh conclusively against finding an employment relationship under the FLSA.  For this reason as well, judgment should be entered on Count I of Plaintiffs' Complaint.

### 2.   The Secondary Factors That Courts May Consider Confirm That These Are Not Employment Relationships Under California Law

As with the FLSA, under California law, "'[t]he most significant factor in determining whether … a person performing services for another is an employee or an independent contractor is the right to control the manner and means of accomplishing the result, that is, the details of the work."  *Cislaw*, 4 Cal. App. 4th at 1292 (quoting *Toyota Motor Sales U.S.A. v. Superior Court*, 220 Cal. App. 3d 864 (1990) (ellipsis in original)). While courts can consider other factors, under California law these factors "merely constitute secondary elements."  *Id.*; *accord Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 479 (N.D. Cal. 2017).   These secondary factors include the right to terminate at will (which is indicative of an employment relationship), and:

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT
ON THE PLEADINGS; SUPPORTING MEMORANDUM

(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Borello*, 48 Cal. 3d at 350.   "[T]he individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends on particular combinations." *Id.* at 351.   Moreover, all factors need not point in one direction for a court to rule as a matter of law that a "worker" is an independent contractor.   *See Arnold v. Mut. of Omaha Ins. Co.*, 202 Cal. App. 4th 580, 590 (2011) ("Even if one or two of the individual factors might suggest an employment relationship, summary judgment is nevertheless proper when ... all the factors weighed and considered as a whole establish that [an individual] was an independent contractor and not an employee.").

Here, in addition to the absence of the requisite control – which is the "decisive test" (*Germann v. Workers' Comp. Appeal Bd.*, 123 Cal. App. 3d 776, 785 (1981)) – the allegations of Plaintiffs' own Complaint make clear that at least six of the secondary factors establish that Plaintiffs are, in fact, independent contractors.   First, the Plaintiffs are clearly engaged in a distinct "occupation," as they own franchises and licenses that they are entitled to sell, have sole control over their labor relations, and determine how to price the products they sell.   *See Juarez v. Jani-King of Cal., Inc.*, No. 09-3495 SC, 2012 WL 177564, at *4 (N.D. Cal. Jan. 23, 2012) (rejecting claim that franchisee was misclassified and noting that franchisees "could bid their own accounts and sell their businesses"); *Arnold*, 202 Cal. App. 4th at 589 (plaintiff was engaged in a distinct occupation that required a license.   Second, Plaintiffs are not paid a "wage": they retain the gross revenues they derive operating their stores less the fees due 7-Eleven under the Franchise

Agreements.  *Juarez*, 2012 WL 177564, at \*4 (noting this factor).  Third, 7-Eleven does not have the right to terminate its agreements with Plaintiffs at will.  *See Cislaw*, 4 Cal. App. 4th at 1295 ("Did Southland have the right to terminate the relationship at will?  Clearly not."); *Juarez*, 2012 WL 177564, at \*4 (the California Franchise Act bars a franchisor from terminating a franchise agreement without cause).  Fourth, 7-Eleven does not "supply" Plaintiffs with the inventory or the Stores they operate – Plaintiffs purchase their inventory and lease their stores from 7-Eleven.   Finally, the parties clearly intended to establish an independent contractor relationship.  (*See* Franchise Agreement, Doc. 24-1, at p. 2 ¶ 2.)  While labels are not dispositive, the parties' express agreement regarding the nature of their relationship "should not be lightly disregarded when both parties have performed under the contract …." *Mission Ins. Co. v. Workers' Comp. Appeal Bd.*, 123 Cal. App. 3d 221, 221 (1981).  Together, these factors overwhelmingly support the fact that the parties' relationship is exactly what it has always been: that of franchisor-franchisee, not employer-employee.

## D.   Plaintiffs Have Not Stated A Claim Under The UCL

The final two Counts of Plaintiffs' Complaint (Counts V and VI) purport to state claims under California Business & Professions Code Sections 17200 *et seq*. (the "UCL").  With the exception of a single word (Count V pleads that 7-Eleven's conduct was "unlawful" while Count VI pleads that 7-Eleven's conduct was "unfair'), the allegations in Count VI repeat verbatim the allegations in Count V. Each Count is premised on the assertion that 7-Eleven violated the UCL "[b]y violating the FLSA and California law" (*see* Complaint ¶¶ 152, 157), and each seeks as relief for these alleged violations "restitution of all lost wages and expenses from [7-Eleven] in an amount according to proof at time of trial."  (*See* Complaint ¶¶ 153, 158.)  These claims fail for several reasons.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  To allege an unlawful business

-23-

practice for purposes of the UCL, a complaint must state facts showing that the defendant's alleged practice violates the law.  *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993).  In other words, the plaintiff must plead an illegal act.  *Albillo v. Intermodal Container Servs., Inc.*, 114 Cal. App. 4th 190, 206 (2003).  In this regard, the UCL "borrows" violations of other laws and treats them as unlawful practices that are independently actionable under the UCL.  *Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992).

In this case, Plaintiffs cannot establish an unlawful or unfair act because the predicates for their UCL claims – alleged violations of the FLSA and California law – fail as a matter of law.  *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 558 (9th Cir. 2010) (plaintiff cannot state a claim under the UCL's unlawful prong if the predicate conduct relied upon is not actionable); *In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*, 2011 WL 1399783, at *3 (N.D. Cal. Apr. 13, 2011) (plaintiff could not establish unlawful act for purposes of the UCL because its underlying statutory claim failed); *Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d 1000, 1010 (N.D. Cal. 2010) ("Where a plaintiff cannot state a claim under the 'borrowed' law, he or she cannot state a UCL claim either.").

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, 7-Eleven respectfully requests that this Court enter judgment in its favor on each Count of Plaintiffs' Amended Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT
ON THE PLEADINGS; SUPPORTING MEMORANDUM

1    Dated:  January 31, 2018          DLA PIPER LLP (US)

2
                                       By: /s/ Norman M. Leon
3                                          NORMAN M. LEON
                                           ELLEN BRONCHETTI
4                                          MICHAEL GIAMBONA
                                           Attorneys for Defendant/
5                                          Counterclaimant 7-ELEVEN, INC.

6

7          I hereby attest that all other signatories listed, and on whose behalf the filing

8    is submitted, concur in the filing's content and have authorized the filing.

9

10   Dated:  January 31, 2018          ARNOLD & PORTER KAYE SCHOLER LLP

11
                                       By: /s/ James F. Speyer
12                                         JAMES F. SPEYER
                                           MATTHEW D. GRANT
13                                         Attorneys for Defendant/
                                           Counterclaimant 7-ELEVEN, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-25-
DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT
ON THE PLEADINGS; SUPPORTING MEMORANDUM