**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **CV 17-7454-JFW (JPRx)** | Date: March 14, 2018 |
| Title: | Serge Haitayan, et al. -v- 7-Eleven, Inc. | |

**PRESENT:**

       **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING DEFENDANT/COUNTER-CLAIMANT 7-11'S MOTION FOR JUDGMENT ON THE PLEADINGS [filed 1/31/18; Docket No. 52]**

      On January 31, 2018, Defendant/Counter-claimant 7-Eleven, Inc. ("7-Eleven") filed a Motion for Judgment on the Pleadings ("Motion"). On February 12, 2018, Plaintiffs Serge Haitayan, Jaspreet Dhillon, Robert Elkins, and Maninder Paul Lobana (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, filed their Opposition. On February 16, 2018, 7-Eleven filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's March 12, 2018 hearing calendar, and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

      7-Eleven owns, operates, and franchises convenience stores under the trademarked name "7-Eleven". 7-Eleven is one of the largest, well-known, and most-successful franchise systems in the world. Currently, there are more than 7,800 7-Eleven stores operating in the United States, approximately 1,500 of which are franchised to independent business owners in California. Each of the franchised 7-Eleven locations are governed by a written franchise agreement.

      Plaintiffs have for many years operated 7-Eleven stores in various locations in California

pursuant to franchise agreements and in accordance with policies and procedures contained in 7-Eleven's Operations Manual.

On October 12, 2017, Plaintiffs, on behalf of themselves and those similarly situated, filed this action against 7-Eleven.  On November 1, 2017, Plaintiffs filed a First Amended Complaint ("FAC") alleging six claims against 7-Eleven: (1) failure to pay overtime compensation in violation of the Federal Labor Standards Act ("FLSA"); (2) failure to pay overtime compensation in violation of California Labor Code Section 1194; (3) failure to indemnify for expenses and losses in violation of California Labor Code Section 2802; (4) failure to provide and maintain uniforms in violation of California law; (5) unfair business practices in violation of California Business and Professions Code Sections 17200 *et seq.*; and (6) unlawful business practices in violation of California Business and Professions Code Sections 17200 *et seq*.  All of Plaintiffs' claims are based on their allegations that they were misclassified as independent contractors instead of employees of 7-Eleven.

7-Eleven moves for judgment on the pleadings as to all of Plaintiffs' claims on the grounds that 7-Eleven is not Plaintiffs' employer.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) governs motions for judgment on the pleadings.  *See* Fed. R. Civ. P. 12(c).  "A Rule 12(c) motion is functionally identical to a motion pursuant to Fed. R. Civ. P. 12(b)(6)."  *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).  "A judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)).  As with motions brought pursuant to Rule 12(b)(6), in addition to assuming the truth of the facts pled, a court must construe all reasonable inferences drawn from those facts in the nonmoving party's favor.  *See Lonberg*, 300 F. Supp. 2d at 945*; see also Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment."  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (internal citations omitted).

## III.    DISCUSSION

Plaintiffs and 7-Eleven entered into a "business format" franchising relationship.  Under the "business format" model of franchising, the franchisee pays royalties and fees for the right to sell products or services under the franchisor's name and trademark.  *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 489 (2014).  "In the process, the franchisee also acquires a business plan, which the franchisor has crafted for all of its stores."  *Id.* (emphasis omitted).  "This business plan requires the franchisee to follow a system of standards and procedures."  *Id.*  "The franchisor's system can take the form of printed manuals, training programs, advertising services, and managerial support, among other things."  *Id.* at 489–90.  "The business format arrangement allows the franchisor to raise capital and grow its business, while shifting the burden of running local stores to the franchisee."  *Id.* at 490.  "The systemwide standards and controls provide a

means of protecting the trademarked brand at great distances." *Id.* "The goal—which benefits both parties to the contract—is to build and keep customer trust by ensuring consistency and uniformity in the quality of goods and services, the dress of franchise employees, and the design of the stores themselves." *Id.*

The existence of a franchise agreement, alone, does not create an agency or employment relationship. Restatement (Third) of Agency § 101 cmt. f (2006) (the fact that a franchisor "imposes constraints" on a franchisee and sets "standards in an agreement for acceptable service quality" does not in itself create a right of control). Generally, "where a franchise agreement gives the franchisor the right of complete or substantial control over a franchisee, an agency relationship exists." *Patterson*, 60 Cal. 4th at 495. However a "franchisor's interests in the reputation of its entire system allows it to exercise certain controls over the enterprise without running the risk of transforming its independent contractor franchisee into an agent." *Id.*

Plaintiffs allege that they are employees of 7-Eleven—under both the FLSA and California law—even though they agreed they were independent contractors in their franchise agreements that govern the parties' relationship. Indeed, all of the claims that Plaintiffs assert against 7-Eleven are based on Plaintiffs' claim that they are employees of 7-Eleven. The basic legal theory underlying Plaintiffs' claims is that 7-Eleven's restrictive policies and practices created an employment relationship between the parties. Accordingly, the threshold question before the Court is whether an employment relationship exists between the parties.

### A.   Whether There Is an Employment Relationship Under California Law and the FLSA

#### 1.   California Law

Both parties agree that no binding decision has addressed which standard courts should apply when determining whether a franchisor is an employer of a franchisee under California law. Although the California Supreme Court's ruling in *Dynamex Operations West v. Superior Court*, 182 Cal. Rptr. 644 (2015), will presumably shed light on this issue, there has been no decision in that case. Thus, in the absence of binding authority, 7-Eleven argues that the Court should apply the standard set forth in *Patterson*. However, Plaintiffs argue that *Patterson* is inapplicable because it addressed when a franchisor can be held vicariously liable for a franchisee's employees torts, not whether a franchisee can be considered an employee of a franchisor. As a result, Plaintiffs argue that the Court should apply the standards in *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522 (2014); *Martinez v. Combs*, 49 Cal. 4th 35 (2010); and *S.G. Borello & Sons, Inc. v. Dept. of Industrial Rel.*, 48 Cal. 3d 341 (1989) to this action.

In *Martinez*, the California Supreme Court set forth three alternative definitions of the phrase "to employ" under California Labor Law: (1) to exercise control over the wages, hours, or working conditions; or (2) to suffer or permit to work; or (3) to engage, thereby creating a common law employment relationship. *Martinez*, 49 Cal. 4th at 64. The *Martinez* test incorporates the standard for determining whether a common law employment relationship exists that was articulated in *S.G. Borello* and *Ayala*. *See generally Martinez*, 49 Cal. 4th at 73 (explaining that the test applied in *Borello* was "the common law test of employment"); *Roman v. Jan-Pro Franchising Int'l, Inc.*, 2017 WL 2265447, at *3 (N.D. Cal. May 24, 2017) (explaining that "the right to control in the context of

the common-law definition of employment" discussed in *Ayala* "is the third prong of *Martinez*."). After carefully reviewing the parties' arguments and the relevant case law, the Court agrees with other district courts that have considered this issue and concludes that it is appropriate to apply the three prong test from *Martinez* recognizing that the principles from *Patterson* are incorporated into the third prong.[1] *See, e.g., Roman*, 2017 WL 2265447, at *2–3 (applying the *Martinez* standard "with the gloss of *Patterson* when considering the common-law definition of employment"); *Salazar v. McDonald's Corp.*, 2016 WL 439416, at *4 (N.D. Cal. Aug. 16, 2016) (stating that applying *Martinez* while ignoring *Patterson* would result in a "distorted view of operative law").[2]

### a. Exercise of Control Over Wages, Hours, or Working Conditions

Under the first prong of *Martinez*, 7-Eleven may be Plaintiffs' employer if it "exercises control over the[ir] wages, hours, or working conditions." *Martinez*, 49 Cal. 4th at 64. Plaintiffs argue that 7-Eleven exercises control over their wages because it determines the amount and timing of the conditional draws paid to them, as described in the relevant provisions of the franchise agreements. In addition, Plaintiffs argue that 7-Eleven exercises control over their hours by requiring them to keep their stores open 24 hours and operate their stores 364 days per year, and that it exerts extensive control over working conditions, including minute details such as keeping stores at a specific temperature. FAC ¶ 105. Plaintiffs also argue that 7-Eleven controls the payment of all wages and instructs Plaintiffs on pay practices, performance appraisals, and disciplinary actions, including worker terminations. Opp'n 15. The Court does not find Plaintiffs' arguments persuasive.

First, 7-Eleven's requirements that Plaintiffs keep their stores open 24 hours, 364 days per week and keep the stores at a specific temperature are simply standards designed to advance "7-[E]leven's goal" of maintaining "conformity to certain operational standards and details" from store to store. *Singh v. 7-Eleven, Inc.*, 2007 WL 715488, at *3 (N.D. Cal. March 8, 2007). Moreover, there is no indication that Plaintiffs, themselves, were actually required to work at the stores a particular number of hours or on particular days.

In addition, the fact that 7-Eleven exercises control over the timing and amount of Plaintiffs' conditional draws is insufficient to show that it exercises control over Plaintiffs' wages. The

---

[1] In *Martinez*, the court held that the applicable wage order definitions of an employment relationship apply in actions brought under Labor Code Section 1194. *Martinez*, 49 Cal. 4th at 67. Because Plaintiffs assert they were misclassified as independent contractors under their franchise agreements with 7-Eleven resulting in a violation of Labor Code Section 1194, the Court concludes that *Martinez* is applicable.

[2] The Court finds that 7-Eleven's argument that courts have not applied *Martinez* since *Patterson* was decided when determining whether an employment relationship exists in the franchising context is disingenuous. Indeed, two of the cases cited by 7-Eleven cited, *Salazar* and *Roman*, clearly incorporated and applied *Patterson* as part of the third prong of the *Martinez* test.

franchise agreements clearly provide that the draws represent the net profits from income earned from Plaintiffs' stores after franchise fees and operational expenses are paid.  It is undisputed that 7-Eleven does not cap the amount of revenue a store may earn or the dollar amount of net profits Plaintiffs may receive.  Accordingly, 7-Eleven's control over the payment of the draws does not in any way restrict the wages or profits Plaintiffs may earn as franchisees.

Finally, Plaintiffs' argument that 7-Eleven controls the payment of all wages and instructs Plaintiffs on pay practices, performance appraisals, and disciplinary actions, including worker terminations is unpersuasive.  Opp'n 15.  As other courts have held, the fact that a franchisor pays a franchisees' employees' wages does not create an employment relationship.  *See id.*, at *6 ("[a]lthough 7-Eleven generates paychecks, this is merely a convenience for the franchisees . . . who provided all relevant wage and tax information).  Moreover, Plaintiffs admit that they have unfettered discretion to hire and fire employees and set wages pursuant to 7-Eleven's compensation packages.  FAC ¶ 89.  In addition, the terms of the franchise agreements provide that Plaintiffs are expected to "exercise complete control over and responsibility for all labor relations and the conduct of [their] agents and employees, including the day-to-day operations of the [s]tore and all [s]tore employees."  Docket No. 24-1, Ex. A, at 9 ¶ 2.  Accordingly, the Court concludes that Plaintiffs have not demonstrated that 7-Eleven exercises control over their wages, hours, or working conditions and, therefore, they cannot show that an employment relationship exists under the first prong of *Martinez*.

### b.     Suffer or Permit

Under the second prong of *Martinez*, 7-Eleven may be Plaintiffs' employer if it "suffer[s] or permit[s]" them to work.  *Martinez*, 49 Cal. 4th at 70.  This prong imposes liability based on a defendant's "knowledge of and failure to prevent the work from occurring."  *Salazaar v. McDonald's Corp.*, 2016 WL 4394165, at *11 (N.D. Cal. Aug. 16, 2016) (citing *Martinez*, 49 Cal. 4th at 11).  For example, "[a] proprietor who knows that persons are working in his or her business . . . while being paid less than the minimum wage, clearly suffers or permits that work by failing to prevent it, while having the power to do so."  *Martinez*, 49 Cal. 4th at 69.

Plaintiffs argue that their allegations are sufficient to satisfy this prong because 7-Eleven mandates that they perform 300 hours of work without pay by completing initial training and imposed "monumental obligations directing" Plaintiffs to "use their best efforts to operate a convenience store up to 24 hours a day, 364 days a year."  FAC ¶ 114.  Even accepting Plaintiffs' allegations as true, the Court concludes that Plaintiffs cannot demonstrate that 7-Eleven knowingly permitted them to perform work while being paid less than minimum wage.

A "franchisee is often an entrepreneurial individual who is willing to invest his time and money, and to assume the risk of loss in order to own and profit from his own business." *Patterson*, 60 Cal. 4th at 490 (internal citation omitted).  This includes participating in training to gain the knowledge and skills necessary to successfully operate their franchises.  Moreover, as 7-Eleven argues, some degree of initial training is necessary to achieve the "consistency and uniformity" that are hallmarks of a franchised business.  In the same vein, the fact that 7-Eleven imposes obligations that direct Plaintiffs to use their best efforts to operate their stores nearly year round does not transform 7-Eleven into Plaintiffs' employer.  As previously discussed, these

requirements advance 7-Eleven's goal of maintaining uniformity among stores, which helps build its brand and ultimately benefits all franchisees. Indeed, an "important aspect of the franchising relationship is the franchisee's ability to reap the benefits of manifesting to the customer the appearance of a seamless enterprise through the use and maintenance of the franchisor's trademark." *Hy-Brand Indus. Contractors, Ltd.*, 365 NLRB 156, at 42 (Dec. 14, 2017), vacated on other grounds by *Hy-Brand Indus. Contractors, Ltd.*, 366 NLRB 26 (Feb. 26, 2018). Accordingly, the Court concludes that Plaintiffs have not satisfied the suffer or permit prong and, therefore, Plaintiffs do not qualify as employees under the second prong of *Martinez.*

### c. Common Law Employment Relationship

Under the third prong of *Martinez*, 7-Eleven may be Plaintiffs' employer if it "engaged" them. "[T]he term engage invokes a common law employment relationship." *Martinez*, 49 Cal. 4th at 64. Under the common law, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the desired result." *Borello*, 48 Cal. 3d at 350. "What matters is whether the hirer "retains all necessary control" over its operations. *Ayala*, 59 Cal. 4th at 531 (quoting *Borello*, 48 Cal. 3d at 357). "Perhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause." *Id.*

"While the principal's right to control is the most important consideration," courts also "consider a number of additional factors, including: the right of the principal to discharge at will, without cause; whether the one performing services is engaged in a distinct occupation or business; whether the work is usually done under the direction of the principal; whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; the length of time for which the services are to be performed; the method of payment; whether the work is part of the regular business of the principal; and whether the parties believe they are creating an employer-employee relationship." *Borello*, 48 Cal. 3d at 351.

In most cases, "once a plaintiff comes forward with evidence that he has provided services for an employer, the employee has established a prima facie case that the relationship was one of employer/employee." *Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir. 2010) (applying California law). However, "this presumption does not apply in the franchise context." *Juarez v. Jani-King of Cal., Inc.*, 2012 WL 177564, at *4 (N.D. Cal. Jan. 23, 2012). Instead, a franchisee must show that the franchisor exercised "control beyond that necessary to protect and maintain its interest in its trademark, trade name, and good will" to establish a prima facie employer-employee relationship. *Id.* (citing *Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1296 (1992)). Indeed, the franchisor "must retain" or "assume" a "general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day to day aspects of the workplace behavior of the franchisee's employees." *Patterson*, 60 Cal. 4th at 478.

The Court concludes that the type or degree of control alleged by Plaintiffs is wholly insufficient to make them employees. The franchise agreements explicitly provide that Plaintiffs "control the manner and means of the operation" of their stores and "exercise complete control over and all responsibility for all labor relations and the conduct of [Plaintiffs'] agents and employees, including the day-to-day operations" of Plaintiffs' stores and employees. Docket No.

24-1, Ex. A at 9 ¶ 2. Although Plaintiffs allege that 7-Eleven provides a compensation scale for Plaintiffs' employees and instructs Plaintiffs on labor practices, it is undisputed that Plaintiffs make the core decisions to hire and terminate store employees and determine their rates of pay.

Plaintiffs also allege that 7-Eleven controls all money and accounting systems and has sole authority to decide various accounting entries. According to Plaintiffs, 7-Eleven also: has the right to use unlimited store space; controls virtually all goods and services sold in Plaintiffs' stores, as well as how they are marketed, advertised, and displayed; dictates which vendors Plaintiffs can purchase products from; contractually commands compliance with all of its standards and specifications for all products and services carried, used or offered for sale at Plaintiffs' stores; contractually commands what clothing employees may wear in stores; and dictates what type of worker is acceptable to hire for Plaintiffs' stores and how the workers must interact with customers. However, all of these requirements are merely goods, presentation, and service standards designed to ensure operational uniformity among 7-Eleven branded stores. See *Cislaw*, 4 Cal. App. 4th at 1294–96 (explaining that 7-Eleven's requirement that franchisees complete an operations training program, keep the store and its surroundings clean, carry an inventory of a "type, quality, quantity, and variety" consistent with the 7-Eleven image, operate the store for certain hours 364 days per year, make daily deposits of all receipts into a designated account, provide 7-Eleven with copies of purchase and sales records, and make the books available for inspection did not amount to day-to-day control over decisions related to employment, inventory, or the day-to-day operations of a franchisee's 7-Eleven store); see also *Singh*, 2007 WL 715488, at *5 (explaining that even though 7-Eleven required that stores operate during certain hours on certain days, retained total control over the delivery of service, and had control over the food service and uniforms employees wore, these controls were not sufficient to create an employment relationship). Based on the allegations in the FAC and the relevant terms of the franchise agreements, the Court concludes that these controls do not exceed what is necessary to protect 7-Eleven's trademark, trade name, and good will.

Moreover, 7-Eleven's ability to enforce its policies is extremely limited. Under the terms of the franchise agreements, 7-Eleven may only terminate the franchise agreement after providing 45 days notice and a full opportunity to cure a violation. "The remedies available do not permit 7-Eleven to interfere with day-to-day operations" of the stores. *Id.* "[S]imply setting the standards without actual control of day-to-day operations is not sufficient to establish an employer relationship." *Id.*

In addition, the Court concludes that the other factors used to determine the existence of a common law employment relationship weigh heavily against finding that Plaintiffs are 7-Eleven's employees. For example, although Plaintiffs may terminate their franchise agreements with 7-Eleven for any reason with only 72-hours notice, 7-Eleven can only terminate with cause. Plaintiffs may also sell their franchised businesses and realize any profits from such sales. Also, although 7-Eleven requires Plaintiffs to carry certain products from certain vendors, Plaintiffs purchase their own inventory and may choose which vendors they purchase from. Finally, the franchise agreements expressly state that Plaintiffs are independent contractors. Accordingly, based on the totality of the circumstances, the Court concludes that Plaintiffs' alleged facts do not demonstrate that they have a common law employment relationship with 7-Eleven. Therefore, Plaintiffs cannot satisfy the third prong of the *Martinez* test. Because Plaintiffs cannot show that they are

employees under any of the three prongs of *Martinez*, the Court concludes that Plaintiffs are not employees of 7-Eleven under California law.  As a result, Plaintiffs' second, third, and fourth claims for violation of California law fail as a matter of law.

### 2. The FLSA

The FLSA requires employers to pay employees a minimum wage and overtime.  29 U.S.C. §§ 206(a), 207(a).  Section 203(d) broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  The term "employee" means "any individual employed by an employer."  29 U.S.C. § 206(e)(1).  To determine whether an individual is an employee or an independent contractor under the FLSA, courts apply the economic reality test, which provides that: "employees are those who as a matter of economic reality are dependent upon the business to which they render service."  *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997); *Driscoll Strawberry Assocs. Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) (internal citation and quotation marks omitted).  Courts consider the following non-exhaustive factors to guide their application of the economic reality test: "1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; and 6) whether the service rendered is an integral part of the alleged employer's business."  *Driscoll*, 603 F.2d at 754.  "The presence of any individual factor is not dispositive of whether an employee/employer relationship exists.  Such a determination depends 'upon the circumstances of the whole activity.'"  *Id.* at 745–55.  Whether an individual should be classified as an employee for purposes of the FLSA is a question of law.  *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004).

#### a. Right to Control

The Court concludes that Plaintiffs have not demonstrated that 7-Eleven exercised the type or degree of control necessary to create an employment relationship between the parties.  *See Jones v. Royal Admin. Servs.*, 866 F.3d 1100, 1105 (9th Cir. 2017) (finding that the "extent of control exercised by the [principal] is the essential ingredient in determining whether an individual is an agent or an independent contractor.").  As previously explained, Plaintiffs have not shown that 7-Eleven exerted control over Plaintiffs' day-to-day operation of their stores.  Instead, the allegations demonstrate that 7-Eleven simply retained control over service standards, merchandise selection and presentation, hours of store operation, employee uniforms, and other aspects of store operations that were necessary to protect 7-Eleven's trademark, trade name, and good will, all of which are insufficient to establish the control necessary to constitute an employment relationship.

#### b. Other Factors

In addition, the Court concludes that the other factors relevant to the issue of whether an employment relationship exists under the FLSA weigh heavily in 7-Eleven's favor. First, the Court concludes that Plaintiffs are entrepreneurs who have the opportunity to earn profits from their businesses as a result of their managerial skill and efforts and, thus, the second factor weighs in favor of 7-Eleven. Although Plaintiffs argue that 7-Eleven controls the source, quality, and content of Plaintiffs' stores' inventories, the undisputed facts demonstrate that Plaintiffs have absolute discretion over which vendors they purchase various goods from, and that they are under no obligation to sell inventory items and services at suggested retail prices. Docket 24-1, Ex. A at 19.

It is also clear that Plaintiffs make significant financial investments in their stores. Indeed, Plaintiffs admit that they are required to pay an initial franchisee down payment, which covers a portion of their inventory, governmental fees for licenses and permits, equipment, and advertising. Thus, the third factor weighs in favor of finding that Plaintiffs are independent contractors rather than employees.

With respect to the fourth factor, the Court concludes that it is neutral. Although Plaintiffs contend that 7-Eleven tightly controls their operations such that they do not need any special skills to run their stores, the undisputed facts demonstrate that at least a certain level of managerial and people skills are required to manage their stores. Plaintiffs also must have a certain level of business acumen to determine appropriate pricing strategies. In addition, as 7-Eleven argues, Plaintiffs admit that at least two of the franchise owners have, through their entrepreneurial efforts, become owners of multiple 7-Eleven stores, which demonstrates that a certain level of skill and business acumen is required to successfully operate and manage franchised stores. *See 7-Eleven, Inc. v. Sodhi*, 2016 WL 3085897, at *6 (D.N.J. May 31, 2016) *aff'd*, 2017 WL 365189 (3d Cir. Aug. 24, 2017).

The Court concludes that the fifth factor also weighs in favor of finding that Plaintiffs are independent contractors. Although Plaintiffs contend that they are "locked into" their franchise agreements with 7-Eleven, the plain language of the agreements demonstrates that Plaintiffs can terminate the agreement at any time for any reason with only 72 hours notice. By contrast, 7-Eleven can only terminate the parties' agreement for a material breach of the franchise agreement and then only after providing the franchisee with an opportunity to cure the alleged breach. The fact that 7-Eleven cannot terminate a franchise without cause is a strong indicator that Plaintiffs are not 7-Eleven's employees. *See id.* (finding this factor weighed against finding an employment relationship for similar reasons).

Finally, the Court concludes that the sixth factor is neutral. While the services Plaintiffs collectively perform are integral to 7-Eleven's business, a single franchise owner "could individually be terminated without apparent negative effect to the franchise." *Id.*

Accordingly, the Court concludes that Plaintiffs are not employees under the FLSA and, therefore, their claim fails as a matter of law.

**B.    UCL Claims**

California's Unfair Competition Law ("UCL") prohibits businesses from engaging in any unlawful, unfair, or fraudulent business acts or practices.  Cal. Bus. & Prof. Code § 17200.  Plaintiffs allege that 7-Eleven engaged in both unfair and unlawful business practices by violating the FLSA and California labor law.  FAC ¶¶ 152, 157.  Because these UCL claims are derivative of Plaintiffs' claims for violation of the FLSA and California labor law, and Plaintiffs' FLSA and California labor law claims fail as a matter of law, the Court concludes that Plaintiffs' fifth and sixth claims for violation of the UCL also fail as a matter of law.

### C. Leave to Amend Would Be Futile

Plaintiffs argue that if the Court is inclined to grant 7-Eleven's Motion, it should provide Plaintiffs leave to amend the FAC because they can plead additional facts to support their claims.  First, the Court notes that Plaintiffs have already had an opportunity to amend.  Notwithstanding that opportunity, Plaintiffs now claim that they can provide additional facts from 7-Eleven's "State of California Franchise Disclosure Documents" and its Operations Manual, which shows: that franchisees must comply with 7-Eleven's Operations Manual, that employees must be proficient in English and wear 7-Eleven's branded apparel; that employees must pass all of 7-Eleven's required training; that store managers must attend specific training; that 7-Eleven provides certain training for store workers; that 7-Eleven provides franchisees with guidance as to how to discipline store workers; that 7-Eleven provides discretionary instructions regarding how to recruit employees, set their compensation, and evaluate their performance; and that 7-Eleven mandates that certain percentages of inventory be purchased from certain vendors and that all stores carry certain categories of inventory.  The Court concludes that the majority of these alleged facts are not new and were already pled in substance or effect in the FAC and to the extent any of them may be new, they would not meaningfully change the nature of the claims nor would they save Plaintiffs' claims.  None of these facts would be sufficient to demonstrate that 7-Eleven exerted the amount of control over Plaintiffs' day-to-day operations necessary to find that they are Plaintiffs' employers.  As 7-Eleven argues, creating a manual that "requires the franchisee to follow . . . [a] long list of marketing, production, operational and administrative areas" is not enough to transform a franchisor into an employer.  *See Patterson*, 60 Cal. 4th at 489.  Moreover, Plaintiffs themselves characterize many of these policies as discretionary.  Accordingly, the Court concludes that granting leave to amend would be futile.

### IV. CONCLUSION

For the foregoing reasons, 7-Eleven's Motion is **GRANTED**.  Plaintiffs' FAC is **DISMISSED with prejudice.**  The parties are ordered to meet and confer and agree on a joint proposed Judgment which is consistent with this Order and which disposes of the counterclaim filed on November 30, 2017.  The parties shall lodge the joint proposed Judgment with the Court on or before **March 19, 2018.**  In the unlikely event that counsel are unable to agree upon a joint proposed Judgment, the parties shall each submit separate versions of a proposed Judgment along with a Joint Statement setting forth their respective positions no later than **March 19, 2018.**

In light of the Court's ruling, Plaintiffs' Motion for Conditional Class Certification and Plaintiffs' Motion for Class Certification, both of which were filed on February 7, 2018 [Docket Nos.

57, 72], are **DENIED** as **MOOT**.

IT IS SO ORDERED.