UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGE HAITAYAN, et al.,<br>  Plaintiffs,<br><br>          v.<br><br>7-ELEVEN, INC.,<br>  Defendant. | CV 17-7454 DSF (ASx)<br><br>Order DENYING Plaintiffs' Motion for Partial Summary Judgment (Dkt. 213) and GRANTING in PART and DENYING in PART Defendant's Motion for Summary Judgment (Dkt. 214) |

Plaintiffs Serge Haitayan, Jaspreet Dhillon, Robert Elkins, and Maninder "Paul" Lobana are 7-Eleven franchise owners who claim they have been misclassified as independent contractors, rather than employees of 7-Eleven, and are therefore entitled to unpaid overtime wages and expense reimbursements. Plaintiffs moved for partial summary judgment that, as a matter of law, they are employees of 7-Eleven under California law. Dkt. 213 (Pltfs' Mot.). 7-Eleven moved for summary judgment on all of Plaintiffs' claims. Dkt. 214 (Def's Mot.). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

### I. Background and Procedural History

On October 12, 2017, four 7-Eleven franchisees brought this putative class action alleging that 7-Eleven improperly classified them as independent contractors (Haitayan I). See Dkts. 1 (Compl.), 24 (FAC). On March 14, 2018, the Honorable John F. Walter granted 7-Eleven's motion for judgment on the pleadings with prejudice, finding that 7-Eleven is not Plaintiffs' employer. Dkt. 132. Plaintiffs appealed. Dkt. 138. The named plaintiffs in Haitayan I then filed a new lawsuit

(later amended to seek relief on behalf of a putative class) seeking declaratory and injunctive relief.  Haitayan v. 7-Eleven, Inc., No. 2:18-cv-05465-DSF (ASx) (Haitayan II), Dkts. 1 (Compl.), 48 (FAC).  On October 10, 2018, this Court denied Plaintiffs' motion for a preliminary injunction and corrective notice.  Haitayan II, Dkt. 55 (Vacated PI Order).  Plaintiffs appealed.  Haitayan II, Dkt. 56.

While the appeals were pending, the California Supreme Court decided Dynamex Operations West, Inc. v. Superior Court, 4 Cal. 5th 903 (2018), which adopted a new test for distinguishing employees from independent contractors.  The Ninth Circuit vacated and remanded both the judgment on the pleadings in Haitayan I and the order denying a preliminary injunction and corrective notice in Haitayan II.  Haitayan v. 7-Eleven, Inc., 762 F. App'x 393 (9th Cir. 2019).  The circuit court "le[ft] it to the district court in the first instance to address the extent to which Dynamex applies to the plaintiffs' claims, including the parties' contentions regarding retroactive application of Dynamex" and noted that it was "currently considering the application of Dynamex to franchisees in Vazquez v. Jan-Pro Franchising Int'l Inc., No. 17-16096."  Id. at 395.  The Ninth Circuit suggested that this Court stay the proceedings pending the decision in Vazquez.  Id.

On March 1, 2019, Haitayan I was transferred to this Court.  Dkt. 180.  On April 29, 2019, the Court stayed both cases "until the Ninth Circuit renders its decision in Vazquez."  Haitayan I, Dkt. 204 (Stay Order) at 16.  The Ninth Circuit subsequently issued the Vazquez decision, holding that (1) "the franchise context does not alter the Dynamex analysis" and (2) Dynamex applies retroactively.  Vazquez v. Jan-Pro Franchising Int'l, Inc., 923 F.3d 575, 586, 595 (9th Cir. 2019).  However, on July 22, 2019, the Ninth Circuit withdrew its Vazquez decision and indicated that it would issue an order certifying to the California Supreme Court the question of whether Dynamex applies retroactively.  Vazquez v. Jan-Pro Franchising Int'l, Inc., 930 F.3d 1107 (9th Cir. 2019).  The Ninth Circuit issued its certification order to the California Supreme Court on September 24, 2019.  Vazquez v. Jan-Pro Franchising Int'l, Inc., 939 F.3d 1045, 1046 (9th Cir. 2019).  On the same day, the Ninth Circuit issued an order "re-establish[ing] the

remaining holdings" from its withdrawn opinion. Vazquez v. Jan-Pro Franchising Int'l, Inc., 939 F.3d 1050, 1051 (9th Cir. 2019).

On October 8, 2019, the parties filed a joint motion to lift the stay in light of the certification of the Dynamex question to the California Supreme Court. Dkt. 209-1 (Stay Mot.). According to the joint motion, the parties did not want to delay a decision in this case any further and therefore agreed that their summary judgment motions "would not require the Court to address the retroactivity of Dynamex." Id. at 3-4. The Court lifted the stay, Dkt. 210, and the parties filed their cross motions for summary judgment on November 11, 2019.

## II. Undisputed Facts

7-Eleven is the world's largest franchisor of retail convenience stores, with more than 7,800 stores operating in the United States. Dkt. 216-1 (DSUF) ¶ 1.[1] Plaintiffs each own at least one 7-Eleven franchise. Id. ¶¶ 2-5. Plaintiffs entered into franchise agreements with 7-Eleven which govern the franchise relationship. Dkt. 217-4 (Speyer Decl. Ex. A); FAC, Ex. A. Under the franchise agreement, 7-Eleven leases property and equipment to the franchisee and grants that franchisee a license to use 7-Eleven's trademarks and operating system. DSUF ¶ 19. In return, Plaintiffs must pay 7-Eleven a franchise fee, along with the "7-Eleven Charge," which is typically 50% of the gross profits of the store. Dkt. 217-1 (PSUF) ¶¶ 8, 23; DSUF ¶ 20. Franchisees retain all remaining gross profits from their store after paying the "7-Eleven Charge" and store expenses (including payroll,

---

[1] Citations to DSUF refer to Plaintiffs' Statement of Genuine Issues in Dispute, which incorporates Defendant's proposed uncontroverted facts and Plaintiffs' responses to those facts. Citations to PSUF refer to 7-Eleven's Statement of Genuine Disputes, which incorporates Plaintiffs' proposed uncontroverted facts and Defendant's responses to those facts. To the extent certain facts are not mentioned in this Order, the Court has not relied on them in reaching its decision. The Court has not considered facts that are irrelevant or otherwise based on inadmissible evidence.

3

maintenance, and supplies).  DSUF ¶ 21.  Each Plaintiff employs between eight and 25 employees at his 7-Eleven stores.  Id. ¶ 8.

Plaintiffs and 7-Eleven intended to establish an independent contractor relationship and Plaintiffs are required under the franchise agreement to "hold [themselves] out to the public as [] independent contractor[s]."  DSUF ¶ 62; PSUF ¶ 1.

### III. Legal Standard

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "This burden is not a light one."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).  But the moving party need not disprove the opposing party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial.  Id. at 323-24; Fed. R. Civ. P. 56(c)(1).  A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment.  See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party.  Id. at 250-51.  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a

4

verdict . . . ." Id. at 252. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'" Fresno Motors v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014). Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (internal quotation marks and ellipsis omitted).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." Fair Hous. Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation marks and brackets omitted). In doing so, the Court must consider the evidence submitted in support of both motions before ruling on each of them. Id.

## IV. Discussion

### A.   Summary of Plaintiffs' Claims

Plaintiffs assert six claims against 7-Eleven stemming from the company's alleged misclassification of Plaintiffs as independent contractors, rather than employees:

- <u>Claims 1 and 2</u>: Unpaid overtime due under the FLSA and California Wage Order 7, Cal. Code Regs. tit. 8, § 11070.3 (FAC ¶¶ 125-138);

- <u>Claim 3</u>: Unpaid business expense reimbursements due under Cal. Labor Code § 2802 (FAC ¶¶ 139-144);

- Claim 4: Unpaid expense reimbursements for uniforms and equipment due under California Wage Order 7, Cal. Code Regs. tit. 8, § 11070.9 (FAC ¶¶ 145-149); and

- Claims 5-6: Violations of the California UCL, Cal. Bus. & Prof. Code § 17200, stemming from unpaid overtime wages and expense reimbursements (FAC ¶¶ 150-159).

Most aspects of both motions do not meet the standard for summary adjudication. Plaintiffs' claims will ultimately require the finder of fact to determine whether they are employees or independent contractors; this is a fact-specific analysis and there are too many outstanding disputes of material fact to resolve that question on summary judgment.

## B. Defendant's Motion for Summary Judgment

### 1. Failure to Pay Overtime Under FLSA and California Wage Order 7 (Claims 1 and 2)

Under both the FLSA and California law, an employee is entitled to overtime pay for all hours worked in excess of the statutory limit. Solis v. Washington, 656 F.3d 1079, 1083 (9th Cir. 2011) (citing 29 U.S.C. § 207(a)(1)); Heyen v. Safeway Inc., 216 Cal. App. 4th 795, 816 (2013).

7-Eleven argues that it is entitled to summary judgment on Plaintiffs' overtime claims under the FLSA and California law because Plaintiffs have put forward no evidence that they worked overtime hours or that 7-Eleven had "actual []or constructive notice that Plaintiffs were allegedly working overtime." Def's Mot. at 10. Plaintiffs maintain that 7-Eleven "should have known that the franchisees were working overtime" because the company "can remotely view the footage from its cameras surveilling its franchisees['] stores 24 hours a day, 7 days a week." Dkt. 216 (Pltfs' Opp'n) at 4.

The undisputed facts show that Plaintiffs have failed to establish the elements of their overtime claims under federal or state law. The only evidence put forth by Plaintiffs suggesting that any Plaintiff actually worked overtime is the testimony of Mr. Elkins, who stated

6

that he typically worked 5.5 to 6.5 hours per day, five days per week, but there were "days where the wheels fall off and you work whatever it takes."[2] DSUF ¶ 36. This testimony is not enough to establish an overtime claim. And there is no evidence that Haitayan or Dhillon ever worked overtime. (Mr. Lobana is not asserting an overtime claim.) Plaintiffs admit they kept no records of the hours they spent in their stores and never gave 7-Eleven any information about the time they spent operating their businesses. Id. ¶ 38. No reasonable jury could find for Plaintiffs based on this evidence.

Plaintiffs argue that 7-Eleven had constructive notice of the alleged overtime worked because the company can "remotely view what is taking place in franchisees' stores" through its security cameras. Id. ¶ 37; Pltfs' Opp'n at 4. But 7-Eleven is not required to go to such extreme lengths to surveil the hours worked by each of its franchisees (especially considering the thousands of 7-Eleven franchises around the country that would require 24/7 monitoring). See Reich v. Dep't of Conservation & Nat. Res., State of Ala., 28 F.3d 1076, 1082 (11th Cir. 1994) ("[A] court need only inquire whether the circumstances were such that the employer either had knowledge [of overtime hours being worked] or else had the opportunity through reasonable diligence to acquire knowledge." (citations and quotations omitted)); White v. Starbucks Corp., 497 F. Supp. 2d 1080, 1083 (N.D. Cal. 2007), citing Morillion v. Royal Packing Co., 22 Cal. 4th 575, 585 (2000). In any event, Plaintiffs' "remote surveillance" theory does not raise a triable issue sufficient to defeat summary judgment. There is no evidence that any Plaintiff worked overtime that 7-Eleven might have observed. At best, Plaintiffs' speculation is a "scintilla" of evidence insufficient to permit a jury to find either the existence of overtime work or of constructive notice by a preponderance of the evidence. See Anderson v. Liberty Lobby, 477 U.S. at 252.

Plaintiffs next contend that 7-Eleven bears the burden of "keep[ing] accurate records of time worked by its employees." Pltfs' Opp'n at 4

---

[2] This is not the equivalent of saying that he worked overtime.

(citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)). This argument misconstrues the law. Under Mt. Clemens, Plaintiffs bear the initial burden of proving by a preponderance of the evidence that they performed work for which they were not properly compensated. 328 U.S. at 687 ("[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."). 7-Eleven's failure to maintain accurate employment records would become relevant only if Plaintiffs had met this initial burden. Because there is no evidence that any Plaintiff actually worked overtime hours, the Court GRANTS Defendant's motion for summary judgment on these claims. See Forrester v. Roth's I. G. A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981) (Upholding summary judgment in favor of the employer on unpaid overtime claims where the employer "had no knowledge that [employee] had been working uncompensated overtime hours" and the employee "did not mention any unpaid overtime work to any store official prior to filing his complaint.").

### 2. Unpaid Expense Reimbursements Under Cal. Labor Code § 2802 (Claim 3)

California Labor Code § 2802 requires an employer to reimburse employees for:

> all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Plaintiffs claim that 7-Eleven violated § 2802 by failing to reimburse, among other things, the salaries Plaintiffs paid to their employees, the costs of maintaining their stores, and "expenses

8

associated with store operational supplies." FAC ¶ 142.³ 7-Eleven argues that summary judgment on this claim is warranted for two reasons:

(1) Plaintiffs are estopped from seeking reimbursement of their expenses from 7-Eleven because they have been deducting those same expenses on their tax returns.

(2) Plaintiffs are not "employees" under § 2802.

Def's Mot. at 22-27.

**Estoppel.** Defendant's estoppel argument does not support summary judgment, particularly because Plaintiffs were presumably acting in good faith when they deducted these now-disputed business expenses. At most, the argument would reduce Plaintiffs' recovery (or force Plaintiffs to file corrected tax returns) if they are successful on these claims.

**"Employment" test for § 2802 claims.** The California Supreme Court in Dynamex "adopted the so-called 'ABC test' for determining whether workers are independent contractors or employees *under California wage order laws*." Vazquez, 923 F.3d at 579 (emphasis added). However, the court did not "decid[e] what standard applie[s] to non-wage-order claims, such as claims for reimbursement of fuel or tolls under Labor Code, section 2802." Garcia v. Border Transportation Grp., LLC, 28 Cal. App. 5th 558, 571 (2018), as modified on denial of reh'g (Nov. 13, 2018); see also Gonzales v. San Gabriel Transit, Inc., 40 Cal. App. 5th 1131, 1157 (2019) ("Dynamex did not reach the question of whether the ABC test applies to non-wage order related Labor Code claims."). 7-Eleven maintains that the holding in Dynamex is limited to wage order claims alone and to determine whether Plaintiffs are "employees" for purposes of § 2802, the Court should apply the multifactor test set forth in S. G. Borello & Sons, Inc. v. Dep't of Indus.

---

³ According to 7-Eleven, this claim "accounts for over 98% of Plaintiffs' claimed damages." Stay Mot. at 4.

9

Relations, 48 Cal. 3d 341, 350 (1989). Def's Mot. at 23-25. Plaintiffs contend that Dynamex's ABC test applies. Pltfs' Opp'n at 14-15.

The Court need not tackle this unresolved issue in order to decide Defendant's motion. There are material disputes of fact that preclude summary judgment regarding Plaintiffs' employment status under both the Borello test and the ABC test.

A critical factor under Borello is the hiring party's ability to control the hired party. 48 Cal. 3d at 350 ("[T]he right to control work details is the 'most important' or 'most significant' consideration"). Here, the parties dispute the extent of 7-Eleven's control over Plaintiffs and their franchised stores. Plaintiffs have submitted evidence showing that 7-Eleven exercises control over the training of store employees, DSUF ¶ 28, dictates some of the products Plaintiffs must carry and from which vendors they must purchase those products, id. ¶ 29, requires Plaintiffs to participate in certain sales promotions, id. ¶ 31, and maintains requirements concerning employee uniforms, store temperature, inventory, and hours of operation, PSUF ¶¶ 3, 4, 7, 9, 12, 14. 7-Eleven disputes many of the facts. See id. At the same time, Plaintiffs make their own hiring decisions and set their own working hours. DSUF ¶¶ 27-28.

Determination of employment status is a fact-specific inquiry. See Borello, 48 Cal. 3d at 349 ("The determination of employee or independent-contractor status is one of fact if dependent upon the resolution of disputed evidence or inferences."); see also Harris v. Vector Mktg. Corp., 656 F. Supp. 2d 1128, 1138 (N.D. Cal. 2009) (Under federal law, "the existence and degree of each factor is a question of fact for the trier of fact to resolve"). Given these disputes of material fact, Plaintiffs' employment status under Borello must be determined by a jury. See Harris, 656 F. Supp. 2d at 1136 (genuine dispute of material fact as to whether defendant exercised sufficient control over plaintiff to determine employment status). The same is true under the ABC test. See infra § IV.C (finding that Plaintiffs' employment status under the ABC test cannot be resolved as a matter of law based on the current evidentiary record).

Therefore, because the Court cannot determine Plaintiffs' employment status at this stage as a matter of law, summary judgment is DENIED on the § 2802 expense reimbursement claim.

### 3. Unpaid Expense Reimbursements Under California Wage Order 7 (Claim 4)

Plaintiffs also seek reimbursement under California Wage Order 7 for the money spent purchasing and maintaining uniforms and store equipment. See FAC ¶¶ 145-149. 7-Eleven does not dispute that the ABC test for employment status applies to this claim, but instead argues that, even if Plaintiffs are deemed employees, they are exempt from reimbursement under the regulation as "persons employed in administrative, executive, or professional capacities." Def's Mot. at 27-28 (citing Cal. Code Regs. tit. 8, § 11070.1).[4]

Wage Order 7 provides six factors to identify "a person employed in an executive capacity" who is exempt from portions of the regulation. Such an employee: (a) has "duties and responsibilities [that] involve the management of the enterprise"; (b) "customarily and regularly directs the work of two or more other employees"; (c) "has the authority to hire or fire other employees"; (d) "customarily and regularly exercises discretion and independent judgment"; (e) is "primarily engaged" in exempt activities; and (f) "earn[s] a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment." Cal. Code Regs. tit. 8, § 11070.1(A)(1)(a)-(f). 7-Eleven submits that Plaintiffs meet all of these requirements.

However, disputes of material fact preclude summary judgment on this claim as well. Plaintiffs argue that they do not earn a salary (a "fixed rate of pay") from 7-Eleven and therefore do not satisfy prong (f) of the "executive" exemption. Pltfs' Opp'n at 11-12 (quoting Negri v.

---

[4] Defendant again argues that Plaintiffs are estopped from seeking reimbursement because they have deducted these expenses on their tax returns. For the reasons discussed above, this argument does not warrant summary judgment.

Koning & Assocs., 216 Cal. App. 4th 392, 398 (2013)).  While Plaintiffs[5] arguably earned more than twice the minimum wage during the relevant time period, their payment comes in the form of a discretionary "draw" that can (and does) fluctuate.  Id.; DSUF ¶¶ 36-58, 66.  Therefore, the Court cannot conclude as a matter of law that Plaintiffs "earn a monthly *salary*" of twice the minimum wage to qualify as exempt "executives" under Wage Order 7.  Summary judgment for Defendant on this claim is DENIED.

### 4. Release of Claims

Finally, Defendant maintains that Plaintiffs Haitayan, Elkins, and Lobana released their claims against 7-Eleven when they renewed their franchise agreements in 2019.  Def's Mot. at 28.  As the Court noted in its Stay Order, "the parties certainly have not provided sufficient legal authority or evidence on which the Court could base a determination about whether the amount 7-Eleven offered [through the franchise renewal agreement] or the circumstances under which it was offered satisfy California law."  Stay Order at 8.  This issue continues to involve disputed legal and factual issues and cannot be resolved on summary judgment.  See DSUF ¶¶ 63-64 (disputing the validity of the releases).  Defendant's motion is DENIED.

## C.  Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs "seek partial summary judgment against 7-Eleven for its unlawful misclassification of Plaintiffs" as independent contractors, rather than employees.  Pltfs' Mot. at 1.  The motion does not seek judgment on any particular claim, but rather seeks judgment as a matter of law on the employment status issue so "[t]he parties may then proceed to litigate the issue of what damages and other remedies Plaintiffs are entitled to recover based upon this misclassification."  Id.

---

[5] Plaintiff Dhillon received no weekly draw from 7-Eleven and earned less than twice the minimum wage during the relevant time period.  DSUF ¶¶ 58-59.  Defendant maintains that Mr. Dhillon still qualifies because he chooses to pay his wife (a co-franchisee) an above-market salary and their combined income exceeds the regulatory limit.  Id.; Def's Mot. at 20-21.

at 22. Because the parties agreed that the summary judgment motions would not argue for the retroactive application of Dynamex, Plaintiffs' motion is limited to a finding that they are employees as of the California Supreme Court's decision in April 2018. Id. at 3 n.3.

Plaintiffs contend the ABC test for employment status (adopted by the California Supreme Court in Dynamex) applies to all of their claims and that 7-Eleven fails Prong B of that test as a matter of law. Id. at 7. The ABC test "requires the hiring entity to establish three elements to disprove employment status":

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

Vazquez, 923 F.3d at 593 (citing Dynamex, 4 Cal. 5th at 956). Because "the ABC test is conjunctive, [] a finding of any prong against the hiring entity directs a finding of an employer-employee relationship." Id. at 596.

Defendant raises a number of objections to Plaintiffs' motion. First, 7-Eleven notes that Dynamex was issued *after* Plaintiffs filed their suit in October 2017 and *after* the close of discovery in this case; therefore, all of the evidence submitted by Plaintiffs predates the relevant time period for their summary judgment motion. Dkt. 217 (Def's Opp'n) at 10-12. Summary judgment is inappropriate, 7-Eleven argues, "[b]ecause Plaintiffs' Motion seeks relief solely for alleged conduct that is not presently before the Court." Id. at 12. 7-Eleven alternatively argues that Plaintiffs are not employees under the ABC test because (1) they do not "provide services to 7-Eleven" and (2) they are not engaged in the same "usual course of business" as 7-Eleven. Id. at 13-17.

The Court agrees that partial summary judgment for Plaintiffs is not warranted. As noted by 7-Eleven, Plaintiffs' motion purports to

13

encompass only the time period after the California Supreme Court's Dynamex decision in April 2018, but they have put forward no evidence as to that time period. The Court cannot rule as a matter of law on Plaintiffs' employment status based on a nonexistent record. This alone compels denial of Plaintiffs' motion.

In addition, there are disputes of material fact that preclude summary judgment on Plaintiffs' employment status under the ABC test. Plaintiffs argue that 7-Eleven fails Prong B of the test as a matter of law because Plaintiffs and 7-Eleven are "engaged in the same usual course of business." Id. at 7; Vazquez, 923 F.3d at 596. "[C]ourts have framed the Prong B inquiry in several ways. They have considered whether the work of the employee is necessary to or merely incidental to that of the hiring entity, whether the work of the employee is continuously performed for the hiring entity, and what business the hiring entity proclaims to be in." Vazquez, 923 F.3d at 597 (citations omitted).

Plaintiffs argue that there is "no question that Plaintiffs . . . performed services within 7-Eleven's usual course of business – that is, convenience store operation." Pltfs' Mot. at 16. But 7-Eleven characterizes its usual course of business as "selling franchises," from which it obtains the vast majority of its revenue and profits, Def's Opp'n at 24-25, and disputes Plaintiffs' contention that it holds itself out as a "convenience store company," PSUF ¶ 2. 7-Eleven also leases property and equipment to franchisees and licenses 7-Eleven's trademarks and operating system. DSUF ¶ 19. Plaintiffs do none of these things. Taken together, the Court cannot conclude as a matter of law that the parties are "engaged in the same usual course of business" and therefore Plaintiffs' motion fails.[6]

---

[6] The Ninth Circuit's decision in Vazquez does not compel a different result. Though the Ninth Circuit expressed skepticism about "the business of franchising" as a distinct course of business under Prong B of the ABC test, the court's analysis was targeted "especially [at] the cleaning franchise industry." Vazquez, 923 F.3d at 599. There are significant factual differences between the cleaning franchises discussed in Vazquez and 7-

14

## V. Conclusion

Plaintiffs' motion for partial summary judgment is DENIED. Defendant's motion for summary judgment is GRANTED as to Plaintiff's claims for unpaid overtime under the FLSA and California law and DENIED as to all other claims.

IT IS SO ORDERED.

Date: February 19, 2020

Dale S. Fischer
United States District Judge

---

Eleven's convenience store franchises that limit the applicability of that case to the facts here. See id. at 580, 595-96 (discussing the operation of defendant's "three-tier franchise structure" and concluding that the top-level franchisor ("a major international janitorial cleaning business") was the employer of the bottom-level "unit franchisees" (individual janitors) who had purchased their franchises from "intermediary 'master franchisees'").

15