UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGE HAITAYAN, et al.,<br>Plaintiffs,<br><br>v.<br><br>7-ELEVEN, INC.,<br>Defendant. | CV 17-7454 DSF (ASx)<br>CV 18-5465 DSF (ASx)<br><br>Order DENYING Plaintiffs'<br>Motion for Class Certification<br>(Dkt. 241/105) |

Plaintiffs Serge Haitayan, Jaspreet Dhillon, Robert Elkins, and Maninder "Paul" Lobana move to certify this suit as a class action. Dkt. 241[1] (Mot.). Defendant 7-Eleven opposes. Dkt. 251 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The motion is DENIED.[2]

I. BACKGROUND

A.   Procedural History

On October 12, 2017, four 7-Eleven franchisees brought this putative class action alleging that 7-Eleven improperly classified them as independent contractors (Haitayan I). See dkts. 1, 24 (FAC). On

---

[1] Unless otherwise noted, docket numbers refer to documents filed in case number 17-7454 DSF (ASx).

[2] Both parties fail to comply with this Court's Standing Order, which states: "Citations that support a statement in the main text must be included in the main text, not in footnotes." Further violations of the Court's Standing Order may result in sanctions.

February 7, 2018, Plaintiffs moved for class certification.  Dkt. 72.  On March 14, 2018, the Honorable John F. Walter granted 7-Eleven's motion for judgment on the pleadings with prejudice, finding that 7-Eleven is not Plaintiffs' employer.  Dkt. 132.  Judge Walter then denied the motion for class certification as moot.  Id. at 10-11.  Plaintiffs appealed.  Dkt. 138.  The named plaintiffs in Haitayan I also filed a new lawsuit (later amended to seek relief on behalf of a putative class) seeking declaratory and injunctive relief.  Haitayan v. 7-Eleven, Inc., No. 2:18-cv-05465-DSF (ASx) (Haitayan II), dkts. 1, 48.  On October 10, 2018, this Court denied Plaintiffs' motion for a preliminary injunction and corrective notice.  Haitayan II, dkt. 55.  Plaintiffs again appealed.  Haitayan II, dkt. 56.

      While the appeals were pending, the California Supreme Court decided Dynamex Operations West, Inc. v. Superior Court, 4 Cal. 5th 903 (2018), which adopted a new test for distinguishing employees from independent contractors.  The Ninth Circuit vacated and remanded both the judgment on the pleadings in Haitayan I and the order denying a preliminary injunction and corrective notice in Haitayan II.  Haitayan v. 7-Eleven, Inc., 762 F. App'x 393 (9th Cir. 2019).  The circuit court "le[ft] it to the district court in the first instance to address the extent to which Dynamex applies to the plaintiffs' claims, including the parties' contentions regarding retroactive application of Dynamex" and noted it was "currently considering the application of Dynamex to franchisees in Vazquez v. Jan-Pro Franchising Int'l Inc., No. 17-16096."  Id. at 395.  The Ninth Circuit suggested this Court stay the proceedings pending the decision in Vazquez.  Id.

      On March 1, 2019, Haitayan I was transferred to this Court.  Dkt. 180.  On April 29, 2019, the Court stayed both cases "until the Ninth Circuit renders its decision in Vazquez."  Dkt. 204 at 16.  The Ninth Circuit subsequently issued the Vazquez decision, holding that (1) "the franchise context does not alter the Dynamex analysis" and (2) Dynamex applies retroactively.  Vazquez v. Jan-Pro Franchising Int'l, Inc., 923 F.3d 575, 586, 595 (9th Cir. 2019).  However, on July 22, 2019, the Ninth Circuit withdrew its Vazquez decision and indicated that it would issue an order certifying to the California Supreme Court the

question of whether Dynamex applies retroactively. Vazquez v. Jan-Pro Franchising Int'l, Inc., 930 F.3d 1107 (9th Cir. 2019). The Ninth Circuit issued its certification order to the California Supreme Court on September 24, 2019. Vazquez v. Jan-Pro Franchising Int'l, Inc., 939 F.3d 1045 (9th Cir. 2019). On the same day, the Ninth Circuit issued an order "re-establish[ing] the remaining holdings" from its withdrawn opinion. Vazquez v. Jan-Pro Franchising Int'l, Inc., 939 F.3d 1050, 1051 (9th Cir. 2019). The California Supreme Court took up the issue and decided Dynamex applies retroactively. Vazquez v. Jan-Pro Franchising Int'l, Inc., No. S258191, 2021 WL 127201 (Cal. 2021).

### B. 7-Eleven Franchising

7-Eleven is the world's largest franchisor of retail convenience stores, with more than 7,800 stores operating in the United States. Dkt. 216-1 ¶ 1. Plaintiffs each own at least one 7-Eleven franchise. Id. ¶¶ 2-5. Plaintiffs entered into an agreement (Franchise Agreement) with 7-Eleven that governs the franchise relationship. Dkts. 217-3, 217-4. Under the Franchise Agreement, 7-Eleven leases property and equipment to the franchisee and grants a license to use 7-Eleven's trademarks and operating system. Dkt. 216-1 ¶ 19. In return, Plaintiffs must pay 7-Eleven a franchise fee and other fees, along with the "7-Eleven Charge," which is typically 50% of the gross profits of the store. Id. ¶ 20; dkt. 217-1 ¶¶ 8, 23. Franchisees retain all remaining gross profits from their store after paying the "7-Eleven Charge," fees, and store expenses. Dkt. 216-1 ¶ 21. Plaintiffs and 7-Eleven intended to establish an independent contractor relationship, id. ¶ 62, and franchisees agree "to hold [themselves] out to the public as . . . independent contractor[s]," dkt. 217-1 ¶ 1.

Plaintiffs must also abide by numerous requirements established by 7-Eleven. Before opening a franchise, Plaintiffs must complete mandatory training sessions. Dkts. 243 (Elkins Decl.) ¶; 7 246 (Dhillon Decl.) ¶ 7. Employees are also retrained annually through 7-Eleven's ongoing training program. Dkt. 244 (Haitayan Decl.) ¶ 9. Franchises must generally be open 24 hours a day or they will face a financial penalty. Elkins Decl. ¶ 5. They must use 7-Eleven's ISP system for

bookkeeping, placing orders, and handling the store's day-to-day activities. Id. ¶ 9; Dhillon Decl. ¶ 9. 7-Eleven also controls stores' bookkeeping. Dhillon Decl. ¶ 10. Franchisees provide daily financial data to 7-Eleven, which it uses to do calculations and compile a monthly financial report it gives back to the franchisee. Elkins Decl. ¶ 10; Dhillon Decl. ¶ 10.

Additionally, 7-Eleven controls access to stores' bank accounts, selects and negotiates contracts with armored car services to deliver deposits to the bank, solicits and negotiates the price of maintenance and cleaning with third-party providers the franchisee then pays, negotiates all of the contracts for the vendors, controls sales promotions and inventory, maintains a camera system to monitor all transactions within stores, requires franchisees to use standard advertising and promotions, controls when 7-Eleven equipment in stores is replaced or upgraded, monitors each transaction in a store, contracts with a third-party as the payroll processor, controls the temperature of the store, controls what time deliveries to stores are made at, and requires franchisees to comply with its food-safety standards and procedures. Elkins Decl. ¶¶ 10-21; Dhillon Decl. ¶¶ 11-22; dkt. 245 (Lobana Decl.) ¶¶ 10-19; Haitayan Decl. ¶¶ 10, 13-22.

In June 2018, 7-Eleven began distributing its 2019 franchise agreement to all California franchisees, regardless of whether they had agreements that expired in 2019. Elkins Decl. ¶ 23. The 2019 franchise agreements offered a more favorable profit split to franchisees who signed it. Id. Additionally, 7-Eleven sent mass emails offering incentives such as a $1,000 cash payment to sign the 2019 agreement. Id. ¶ 25. Within the 2019 agreement was a release of claims against 7-Eleven, including claims in Haitayan I. Id. ¶ 24.

## II. LEGAL STANDARD

Before certifying a class, district courts must perform a "rigorous analysis" to determine whether the requirements of Rule 23 of the Federal Rules of Civil Procedure are met. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011). The party seeking class certification

4

bears the burden of establishing that these requirements are met. Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010). Courts can look behind the pleadings to issues overlapping with the merits of the underlying claims. Dukes, 564 U.S. at 350-51.

### A. Rule 23(a)

To certify a class under Rule 23, the party seeking class certification must first satisfy the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation. Rodriguez, 591 F.3d at 1122.

#### 1. Numerosity

The class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of the Nw., Inc v. EEOC, 446 U.S. 318, 330 (1980). "But a conclusory allegation that a class is so numerous that joinder is impracticable is not sufficient to meet the requirements of Rule 23(a)(1)." Valentino v. Howlett, 528 F.2d 975, 978 (7th Cir. 1976).

#### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "The commonality requirement serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." Rodriguez, 591 F.3d at 1122 (internal quotation marks omitted). Courts look for "shared legal issues or a common core of facts." Id. It is unnecessary for both to be present. Id. Where diverging facts underlie the individual claims of class members, courts consider whether the issues "at the heart" of those claims are common such that the class vehicle would "facilitate development of a uniform framework for analyzing" each class member's situation. Id. at 1123.

### 3. Typicality

The representative parties' claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of other class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1020, 1019 (9th Cir. 1998), overruled on other grounds by Dukes, 564 U.S. 338. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted).

The inquiry is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id. (internal quotation marks omitted). Where the claims of a representative are subject to unique defenses, they may fail the typicality requirement. Id. However, such defenses should defeat typicality "only where they 'threaten to become the focus of the litigation.'" Rodriguez, 591 F.3d at 1124 (quoting Hanon, 976 F.2d at 508). In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge," and both serve to determine whether certifying the class would be "economical" and whether absent class members' interests would be protected. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982).

### 4. Adequate Representation

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." In evaluating the adequacy of representation, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. In practice, this factor tends to

6

merge with the commonality and typicality requirements. Falcon, 457 U.S. at 157 n.13.

### B. Rule 23(b)(3)

In addition to the requirements of Rule 23(a), the class must satisfy one of the three provisions of Rule 23(b). Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(b)(3) certification is "[f]ramed for situations in which 'class-action treatment is not as clearly called for'" as under Rule 23(b)(1) and (b)(2), but "where class suit may nevertheless be convenient and desirable." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (internal quotation marks omitted). Two requirements must be met: (1) common questions of law or fact must "predominate over any questions affecting only individual members," and (2) a class action must be the "superior" vehicle for litigating the controversy. Fed. R. Civ. P. 23(b)(3). The predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a)(2), Amchem, 521 U.S. at 624, and judicial economy is a "central concern." Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 944 (9th Cir. 2009).

## III. DISCUSSION

### A. Timeliness of Motion

7-Eleven argues this motion is untimely because it will interfere with the March 23, 2021 trial date set by the Court. Rule 23(c)(1)(A) requires the class certification decision be made "[a]t an early practicable time." Local Rule 23-3 further requires that a plaintiff move for class certification "[a]t the earliest possible time . . . but no later than any deadline set by the assigned judge." Because the Court denies the motion, it need not rule on timeliness.

### B. Rule 23 Requirements

#### 1. California Employment Tests

The parties first dispute which employment test governs this case. Whether certain laws and regulations in the California Labor

Code apply to Plaintiffs depends on their status as independent contractors. For nearly three decades, California courts have used a test based on the decision in S. G. Borello & Sons, Inc. v. Department of Industry Relations, 48 Cal. 3d 341 (1989) (in bank) to determine whether workers are correctly classified as employees or independent contractors. The Borello test considers the "right to control work," as well as many other factors, including (a) whether the worker is engaged in a distinct occupation or business, (b) the amount of supervision required, (c) the skill required, (d) whether the worker supplies the tools required, (e) the length of time for which services are to be performed, (f) the method of payment, (g) whether the work is part of the regular business of the principal, and (h) whether the parties believe they are creating an employer-employee relationship. Id. at 355-58.

In April 2018, the California Supreme Court replaced the Borello test with the "ABC test" for the purpose of determining employment under California wage orders. Dynamex Operations W. v. Superior Court, 4 Cal. 5th 903 (2018). The court held that under the "suffer or permit to work" language used in all California wage orders, any worker who performs work for a business is presumed to be an employee who falls within the protections afforded by a wage order. Id. at 916. However, such a worker can properly be found to be an independent contractor – to whom the wage order would not apply – if the hiring entity establishes:

> (A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact; (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity.

8

Id. at 916-17 (emphasis added). If the putative employer fails to establish any one of the three prongs with regard to a worker, the worker is properly classified as an employee. California's Assembly Bill 5 (AB 5) codified Dynamex's holding and adopted the ABC test for all provisions of the California Labor Code, the Unemployment Insurance Code, and IWC wage orders, with numerous exemptions. See A.B. 5, Ch. 296, 2019-2020 Reg. Sess. (Cal 2019); Cal. Lab. Code §§ 2750.3 et seq.[3] AB-5 applies only to work performed after January 1, 2020.

Plaintiffs have two surviving claims – a section 2802 claim and a claim for unpaid expense reimbursements under Wage Order 7.[4] See dkt. 222. The parties dispute which of the two tests – the ABC or Borello test – should apply to these claims. See Opp'n at 12-13. The California Supreme Court recently held the ABC test adopted in Dynamex applies retroactively. Vazquez, 2021 WL 127201, at *1. In doing so, the court also emphasized that Dynamex applies only to *wage orders*. Id. (relying on the fact that Dynamex applied only to wage orders to illustrate that it did not change a settled rule and the decision should therefore apply retroactively). Consequently, Dynamex applies, but only to Plaintiffs' Wage Order 7 claim.[5]

---

[3] On September 4, 2020, the California legislature passed and the Governor signed Assembly Bill 2257, which repealed and replaced the statutory changes enacted by AB 5. Stats. 2020, ch. 38 § 2. AB 2257 revised certain exemptions to the ABC test and created additional exemptions, none of which is relevant here. Id.

[4] The Court recently granted summary judgment to 7-Eleven as to Plaintiffs' retaliation claim in Haitayan II.

[5] In ruling directly on this issue, a number of other courts have come to the same conclusion. See, e.g., Henry v. Central Freight Lines, Inc., No. 2:16-cv-00280-JAM-EFB, 2019 WL 2465330, at *7-8 (E.D. Cal. June 13, 2019) (holding the Borello standard rather than the ABC test applied to plaintiff's statutory claims); see also Cal. Trucking Ass'n v. Su, 903 F.3d 953, 959 n.4 ("Dynamex did not purport to replace the Borello standard in every instance where a worker must be classified as either an independent contractor or an employee for purposes of enforcing California's labor protections.").

AB 5 is not retroactive and, therefore, applies only to work performed after January 1, 2020, when the statute went into effect. Under Evangelatos v. Superior Court, "in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application." 44 Cal. 3d 1188, 1209 (1988). There is no such clarity here. See also Olson v. California, No. CV 19-10956-DMG (RAOx), 2020 WL 905572, at *12 (C.D. Cal. Feb. 10, 2020) ("AB 5 does not apply retroactively . . . . Instead, AB 5 applies to work performed after January 1, 2020."). Plaintiffs do not argue that AB 5 should apply to their claim if it is not retroactive.

Because Dynamex applies retroactively, but only to wage orders, and AB 5 is not retroactive, the ABC test applies to Plaintiffs' Wage Order claim and the Borello test applies to Plaintiffs' Labor Code claim.

### 2. Plaintiffs' Labor Code Claim

Plaintiffs' motion focuses almost entirely on the ABC test. Their only argument under the Borello test is the following sentence in a footnote: "Moreover, even if the Court were to determine that some aspect of the case is covered by Borello, the case is certifiable under that standard as well." Mot. at 3 n.3. "[A] party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)).

> The Rule does not set forth a mere pleading standard. Rather, a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).

Id. (citations and internal quotation marks omitted). District courts have repeatedly held that vague and conclusory arguments are insufficient to satisfy a plaintiff's burden. See, e.g., Moore v. Coty Inc.,

10

No. EDCV 14-2427-VAP (DTBx), 2016 WL 6023820, at *2 n.4 (C.D. Cal. Mar. 3, 2016) (plaintiff failed to sustain burden of showing compliance with certain Rule 23 requirements with two short footnotes that were "vague and conclusory"); Abbit v. ING USA Annuity, No. 13cv2310-GPC-WVG, 2015 WL 7272220, at *13 (S.D. Cal. Nov. 16, 2015) (plaintiff failed to meet burden where he "summarily addresse[d] the merits of class certification as to [] three causes of action in less than one page of briefing").

Plaintiffs' ability to meet the commonality and predominance requirements of Rule 23 hinges on which legal test – either the ABC or Borello test depending on the claim – applies. Plaintiffs dedicate the substantial majority of their briefing to arguing why class certification is proper under the ABC test. However, the Court finds Dynamex applies only to their wage order claim. Plaintiffs cannot meet their burden on these two factors as to their Labor Code claim without adequately explaining why common questions predominate under the Borello test.[6]

Because Plaintiffs have failed to carry their burden of demonstrating class certification is proper as to their Labor Code claim, the Court DENIES the motion for class certification on Plaintiffs' Section 2802 claim for expense reimbursement.

---

[6] Plaintiffs' failure to address the Borello test is rather baffling. Plaintiffs' Motion was less than 20 pages – significantly under the 25-page limit. See Standing Order ¶ 4(c). Additionally, 7-Eleven raised this insufficiency argument in its Opposition, and Plaintiffs' only response in their Reply was: "And even if the Court determines that the ABC test does not apply to these claims, California courts have routinely certified § 2802 claims in independent contractor misclassification cases under the prior Borello standard. See cases cited in Dkt. 241, p.3, n.4. Class certification is warranted even if the Court finds that Borello applies to Plaintiffs' claims under § 2802 and for retaliation." Dkt. 253 (Reply) at 3.

### 3. Plaintiffs' Wage Order Claim

Dynamex, and therefore the ABC test, governs Plaintiffs' remaining claim – a wage order claim. 7-Eleven argues that even applying the ABC test, class certification is inappropriate because common questions do not predominate and Plaintiffs failed to satisfy the adequacy of representation requirement. Opp'n at 13-25. 7-Eleven does not contest the remaining Rule 23 requirements, so the Court begins its analysis with the two disputed factors.

#### a. Predominance

Predominance under Rule 23(b)(3) asks whether a putative class is "sufficiently cohesive to warrant adjudication by representation." Vinole, 571 F.3d at 944. Courts must consider "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016). Further, in order to satisfy Rule 23's predominance requirement, "plaintiffs must show that 'damages are capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." Just Film, Inc. v. Buono, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting Behrend, 569 U.S. at 34-38).

Plaintiffs argue common issues predominate as to the underlying misclassification issue and the wage order claim. 7-Eleven argues individualized issues dominate the misclassification inquiry because (1) each of the three ABC test prongs requires individualized inquiries; (2) there are individualized questions regarding which franchisees are considered members of the putative class; (3) the wage order exemptions are not subject to common proof; and (4) 7-Eleven's affirmative defense involving franchisees' releases rests on individualized proof. Opp'n at 14-24.

### **Wage Order Claim's Individualized Issues**

7-Eleven argues Plaintiffs' Wage Order 7 claim for money spent buying and maintaining uniforms and store equipment is not amenable to class treatment because whether Plaintiffs are exempt from the provisions of the Wage Order requires individual proof. Opp'n at 21-22. Labor Code and Wage Order exemptions often "militate against certification" because they typically require an individualized, fact-intensive inquiry. In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009). The executive exemption does not foreclose the possibility of certification, but before certification, courts must investigate whether there are "centralized rules . . . suggest[ing] a uniformity among employees that is susceptible to common proof." Id. at 958-59. "[U]niform corporate policies will often bear heavily on [the] question[] of predominance" because, to the extent they reflect the realities of the workplace, they facilitate common proof of otherwise individualized issues. Id. at 958.

Whether the Wage Order claim is subject to common proof therefore turns on whether proof of the exemption will rely primarily on corporate policies and procedures or on individual franchisees' actions. See also Vinole, 571 F.3d at 946 (in evaluating exemptions, courts should examine "whether the employer exercised some level of centralized control in the form of standardized hierarchy, standardized corporate policies and procedures governing employees, uniform training programs, and other factors susceptible to common proof").

Wage Order 7 provides it "shall not apply to persons employed in administrative, executive, or professional capacities." Cal. Code Regs. tit. 8, § 11070(1)(A). To qualify for the "executive" exemption – which 7-Eleven argues applies here – an employee must: (1) manage the enterprise, a customarily recognized department, or subdivision thereof; (2) direct the work of two or more other employees; (3) have the authority to hire or fire, or have their recommendations to hire, fire, or promote given weight; (4) exercise discretion and independent judgment; (5) be primarily engaged in exempt activity more than fifty

13

percent of the time; and (6) earn a monthly salary equal to twice the state minimum wage for full-time employment. Id.

The exemption analysis here will involve both common and individualized questions. Whether franchisees manage an enterprise and have the authority to hire and fire are subject to common proof based on the franchise agreement. The same is true of whether franchisees exercise discretion and independent judgment. However, how many employees franchisees direct and whether franchisees are primarily engaged in an exempt activity more than fifty percent of the time are individualized inquiries. The final factor, a monthly salary, involves both individual and common questions. How much money each franchisee earns is an individualized inquiry, but whether the "draws" franchisees earn count as salaries is subject to common proof. See dkt. 222 at 11-12 (denying summary judgment for 7-Eleven on the exemption issue because it was unclear if "draws" were a monthly salary).

The Court focuses here on the fifth factor – if franchisees are primarily engaged in an exempt activity. "Exempt" management work includes, but is not limited to, activities like (1) the "interviewing, selecting, and training of employees," (2) "setting and adjusting their rates of pay and hours of work," (3) "directing the work of employees," and (4) "appraising employees' productivity and efficiency for the purpose of recommending promotions." 29 C.F.R. § 541.102; Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(e). The regulations stress "[t]he work actually performed by the employee during the course of the workweek must, first and foremost, be examined[,] and the amount of time the employee spends on such work." Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(e). "[A]ll work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions" is also classified as exempt work. Id.

Franchisees' salaries and employees are straightforward factual questions, but primary engagement is more complex and fact intensive. In Marlo v. United Parcel Service, Inc., 639 F.3d 942, 948 (9th Cir. 2011), for example, the Ninth Circuit affirmed the district court's

decertification of a class on predominance grounds because of the individualized inquiries the court would have to make to resolve the question of exemptions. The circuit noted, "the fact that UPS expects FTS to follow certain procedures or perform certain tasks does not establish whether they actually are primarily engaged in exempt activities." Id. (internal quotation marks omitted). The circuit also found the district court did not err in requiring week-by-week determination of exempt status. Id.[7]

Complicating matters further, courts are expected to analyze an individual's *purpose* in performing work. This is because, under California law, "[a] task performed because it is helpful in supervising the employees or contributes to the smooth functioning of the department is exempt, even though the identical task performed for a different, nonmanagerial reason would be nonexempt." Heyen v. Safeway Inc., 216 Cal. App. 4th 795, 822 (2013) (punctuation omitted).

That determination cannot be made on a class-wide basis as each franchisee spends unique amounts of time completing different tasks. For instance, Elkins described a typical Monday as follows:

> I will start the day out at one store. I will do some tobacco ordering, and I will do other ordering that the BT system directs me to order that has to be ordered only on that day. I will relieve the clerks from register duty while they go take their lunch breaks. I will talk with vendors if they happen to come in. I will assist with making hot foods. I will sweep the floor, mop the floor. I will pick up trash outside, and I wear multiple hats, and there is not anything around the store that I don't do.

Dkt. 251-7 at 12. On Tuesdays, Elkins said his duties differed, consisting of more ordering and stocking new merchandise. Id. at 14-

---

[7] The same would likely be true for considering whether the person directed the work of two or more other employees.

15

15. Other franchisees likely have very different days than any one of Elkins' days. To examine each franchisee's exact activities week-by-week to determine if they are in fact exempt executives, the Court would "need to hold several hundred mini-trials with respect to each [franchisee's] actual work performance." Vinole, 571 F.3d at 947. The exemption issue requires examining how franchisees spend their time in practice, and there is no common proof suggesting a simple "yes" or "no" answer across the class.

Plaintiffs argue only that it "makes little sense for employers to classify all workers as overtime-exempt but then to contend that an individual inquiry is needed to determine whether they are, in fact, exempt." Reply at 10. However, the Ninth Circuit has rejected that exact argument. In In re Wells Fargo, the circuit found that a corporation's "uniform exemption policy . . . does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties." 571 F.3d at 959. Plaintiffs have not met their burden to show common issues predominate under Rule 23(b)(3).

## IV. CONCLUSION

Plaintiffs have not carried their burden to demonstrate class certification is appropriate under the Borello test. The Court therefore DENIES certification for their Labor Code claim. Additionally, in light of the individualized issues needed to show franchisees are not exempt executives for purposes of the Wage Order, Plaintiffs have not shown common issues will predominate, and class treatment is therefore not warranted. Their request for certification is DENIED.

IT IS SO ORDERED.

Date: February 8, 2021

*Dale S. Fischer*
Dale S. Fischer
United States District Judge