1  James F. Speyer (SBN 133114)
2  James.Speyer@arnoldporter.com
   ARNOLD & PORTER
3  KAYE SCHOLER LLP
   777 South Figueroa Street, 44th Floor
4  Los Angeles, California 90017-5844
   Tel: (213) 243-4000 / Fax: (213) 243-4199
5

Norman M. Leon (*pro hac vice*)
Norman.Leon@dlapiper.com
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
Tel: (312) 368-4000 / Fax: (312) 236-7516

6
7  Matthew D. Grant (*pro hac vice)*
   Matthew.Grant@arnoldpoter.com
8  ARNOLD & PORTER
   KAYE SCHOLER LLP
9  250 West 55th Street
   New York, New York 10019-9710
10 Tel: (213) 836-8000 / Fax: (212) 836-8689

Matthew J. Iverson (pro hac vice)
Matthew.Iverson@dlapiper.com
DLA Piper LLP (US)
33 Arch Street
Boston, MA 02110
Tel: (617) 406-6000 / Fax: (617) 406-6100

11
12 Attorneys for Defendant 7-Eleven, Inc.
13
14          **UNITED STATES DISTRICT COURT**
15   **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

16 SERGE HAITAYAN, et al.,

17                    Plaintiffs,

18      vs.

19 7-ELEVEN, INC., a Texas corporation,

20                    Defendant.

Case No. 2:17-cv-7454 DSF (AS)
Case No. 2:18-cv-5465 DSF (AS)

**7-ELEVEN, INC.'S OPPOSITION
TO PLAINTIFFS' EX PARTE
MOTION REQUESTING STAY OR,
IN THE ALTERNATIVE, TO
CERTIFY INTERLOCUTORY
ORDER**

21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................3

I.    PLAINTIFFS HAVE PRESENTED NO REASON FOR THIS COURT
      TO ISSUE A STAY ......................................................................................3

II.   THERE IS NO REASON TO CERTIFY ANY QUESTIONS FOR
      INTERLOCUTORY REVIEW ....................................................................8

      A.    The Applicable Standards ................................................................8

      B.    Plaintiffs Have Met None of The Requirements for Certification............9

CONCLUSION .....................................................................................................13

DEFENDANT/COUNTERCLAIM PLAINTIFF 7-ELEVEN, INC.'S
OPPOSITION TO PLAINTIFFS' EX PARTE MOTION REQUESTING STAY

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. President Lines, Ltd. v. Int'l Longshore and Warehouse Union*,
   721 F.3d 1147 (9th Cir. 2013) ...................................................................5

*Art Tobias v. City of Los Angeles*,
   Case No. CV17-1076 DSF, 2018 WL 6003556 (C.D. Cal. June 20,
   2018) (Fischer, J.) ....................................................................................8

*Brizzee v. Fred Meyer Stores, Inc.*,
   Case No. CV 04–1566–ST, 2008 WL 426510 (D. Or. Feb. 13, 2008) ...................9

*Cal. Trucking Ass'n v. Su*,
   903 F.3d 953 (9th Cir. 2018) .................................................................10

*In re Cement Antitrust Litig. (MDL No. 296)*,
   673 F.2d 1020 (9th Cir. 1982) (en banc) ......................................8, 9, 12

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir. 1962) ...................................................................3

*Couch v. Telescope, Inc.*,
   611 F.3d 629 (9th Cir. 2010) .........................................................3, 10, 11

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
   498 F.3d 1059 (9th Cir. 2007) ...................................................................5

*Heaton v. Social Finance, Inc.*,
   Case No. 14-cv-05191-THE, 2016 WL 232433 (N.D. Cal. Jan. 20,
   2016) ....................................................................................................9

*In re Intermagnetics America, Inc.*,
   101 B.R. 191 (C.D. Cal. 1989) ...................................................................3

*James v. Price Stern Sloan, Inc.*,
   283 F.3d 1064 (9th Cir. 2002) ...................................................................8

*James v. Uber Techs. Inc.*,
   Case No. 19-cv-06462-EMC, 2021 WL 254303 (N.D. Cal. Jan. 26,
   2021) ...............................................................................................11, 12

iii

*Landis v. N. American Co.*,
   299 U.S. 248 (1936)...........................................................................................3, 5, 7

*Lawson v. Grubhub, Inc.*,
   Case No. 15-CV-05128-JSC, 2018 WL 6190316 (N.D. Cal. Nov. 28,
   2018) ............................................................................................................2, 5

*Lawson v. GrubHub, Inc.*,
   Case No. 18-15386 (9th Cir.) ...................................................................*passim*

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ..........................................................................3, 7

*Luman v. Thompson*,
   Case No. 14-15385, 647 Fed. Appx. 804 (9th Cir. Apr. 8, 2016)............................5

*Meeker v. Belridge Water Storage Dist.*,
   Case No. 1:05-CV-603-OWW, 2007 WL 781889 (E.D. Cal. Mar. 13,
   2007) .............................................................................................................12

*Mission Power Eng'g Co. v. Continental Casualty Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) ..................................................................1, 3

*MOBE, Ltd. v. Digital Altitude LLC*,
   Case No. CV 16-5708 PA (KSX), 2017 WL 3579492 (C.D. Cal. June
   27, 2017) ............................................................................................................3

*Olson v. California*,
   Case No. CV 19-10956-DMG, 2020 WL 905572 (C.D. Cal. Feb. 10,
   2020) ............................................................................................................11

*Recycle for Change v. City of Oakland*,
   856 F.3d 666 (9th Cir. 2017) ..........................................................................11

*Ricketts v. CBS Corporations*,
   Case No. CV 19-03895-DSF, 2020 WL 3124218 (C.D. Cal. Mar. 19,
   2020) (Fischer, J.) ....................................................................................10, 11

*Rivac v. NDEX West, LLC*,
   Case No. 14-15194, 669 Fed. Appx. 352 (9th Cir. Oct. 6, 2016) ..........................5

*Rollins v. Dignity Health*,
   Case No. 13-CV-1450, 2014 WL 6693891 (N.D. Cal. Nov. 26, 2014)..................10

DEFENDANT/COUNTERCLAIM PLAINTIFF 7-ELEVEN, INC.'S
OPPOSITION TO PLAINTIFFS' EX PARTE MOTION REQUESTING STAY

*Ryan, Beck & Co., LLC v. Fakih*,
    275 F. Supp. 2d 393 (E.D.N.Y. 2003) ...................................................................... 9

*Singleton v. Wulff*,
    428 U.S. 106 (1976) ................................................................................................... 5

*Swint v. Chambers County Comm'n*,
    514 U.S. 35 (1995) ..................................................................................................... 9

*U.S. v. Tenet Healthcare Corp.*,
    Case No. CV04-857 GAF(JTLX), 2004 WL 3030121, at *1 (C.D.
    Cal. Dec. 27, 2004) .................................................................................................... 9

*U.S. v. Woodbury*,
    263 F.2d 784 (9th Cir. 1959) ..................................................................................... 8

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
    2019 WL 4648399 (9th Cir. Sep. 24, 2019) .............................................................. 4

*Wilson v. Odwalla, Inc.*,
    Case No. CV 17-2763 DSF, 2017 WL 3084278 (C.D. Cal. June 28,
    2017) (Fischer, J.) ..............................................................................................*passim*

*Yong v. I.N.S.*,
    208 F.3d 1116 (9th Cir. 2000) ............................................................................ 2, 5

**State Cases**

*Dynamex Operations W. v. Superior Court*,
    4 Cal. 5th 903 (2018) .........................................................................................*passim*

*Evangelatos v. Superior Ct.*,
    44 Cal. 3d 1188 (1988) ...................................................................................... 11, 12

*McClung v. Employment Dev. Dep't*,
    34 Cal. 4th 467 (2004) ............................................................................................. 12

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
    --- P.3d ----, 2021 WL 127201 (Cal. Jan. 14, 2021).................................... 2, 6, 7, 10

**Federal Statutes**

28 U.S.C. § 1292(b) ............................................................................................. 8, 9, 10

**State Statutes**

Cal. Labor Code § 2802 ..................................................................................*passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Plaintiffs' Ex Parte Motion Requesting Stay or, in the alternative, to Certify Interlocutory Order (Dkt. 282[1]) constitutes the fourth unnecessary "emergency" motion Plaintiffs have filed this week (*see also* Dkts. 276, 279 and 281) and the second time they have forced 7-Eleven, Inc. ("7-Eleven") and this Court to "drop[] everything" to respond to an emergency that does not exist.  (*See* Dkt. 21 at 4-5 in Case No. 2:18-5465 ["*Haitayan II*"], where the Court admonished Plaintiffs' counsel to "consider *Mission Power*" and the standards for seeking *ex parte* relief in "future submissions") (quoting *Mission Power Eng'g Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 491-92 (C.D. Cal. 1995)).  According to Plaintiffs, this latest emergency stems from the fact that there is supposedly some chance that, in a different case that has not even been scheduled for argument (*Lawson v. GrubHub, Inc.*, Case No. 18-15386 (9th Cir.), in which Plaintiffs' counsel represents the plaintiffs), the Ninth Circuit might disagree with this Court (and every other state appellate and federal district court) and conclude that the ABC test, and not the *Borello* test, governs Plaintiffs' claim under Section 2802 of the Labor Code.  This case, Plaintiffs claim, must therefore be stayed until *Lawson* is resolved.

Plaintiffs' request is rather bold given that *on at least four occasions* since Plaintiffs' counsel filed the opening brief in *Lawson*, Plaintiffs filed motions which specifically asked *this* Court to address which test applied to Plaintiffs' Section 2802 claim.  In fact, just three months ago, after they noted the parties' dispute as to the governing standard, Plaintiffs filed a "Motion for Ruling on Outstanding Legal Issues" which implored this Court to "resolve the [parties'] dispute" and "rule that *Dynamex* applies to claims for expense reimbursement under Section 2802."  (Dkt. 252 at 3.) Not once in any of those pleadings did Plaintiffs mention *Lawson* or claim that its resolution could somehow impact proceedings in this Court.

---

[1]      Unless otherwise noted, all Dkt. references are to the Docket in *Haitayan I*.

1

Plaintiffs' sudden change of heart notwithstanding, there is no basis for issuing a stay here. Stays should not be indefinite in nature, and both this Court and the Ninth Circuit have held that "a stay that terminates 'upon the 'resolution of [an] appeal' has an indefinite term." *Wilson v. Odwalla, Inc.*, Case No. CV 17-2763 DSF (FFMx), 2017 WL 3084278, at *4 (C.D. Cal. June 28, 2017) (Fischer, J.) (quoting *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000)). The concerns that underlie this rule are particularly applicable here, given that oral argument has not been scheduled in *Lawson*, there is no telling how long it will take the Court to issue a decision once argument is heard, and there is not even any guarantee that the Court will decide the issue (since the trial court never had the opportunity to address the issue, *see Lawson v. Grubhub, Inc.*, Case No. 15-CV-05128-JSC, 2018 WL 6190316, at *7 (N.D. Cal. Nov. 28, 2018)).

In any event, even if it reached the issue of which standard applies, there is no reason to believe the Ninth Circuit would disregard (i) the holdings of the California appellate courts, which have consistently held that *Borello*, and not the ABC test, applies to claims under the Labor Code, and (ii) the California Supreme Court's recent opinion in *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, --- P.3d ----, 2021 WL 127201 (Cal. Jan. 14, 2021), which repeatedly "emphasized that *Dynamex* applied only to *wage orders*." (Dkt. 275 at 9; emphasis in original.)

Plaintiffs' request that this Court certify various questions for interlocutory review on an *ex parte* basis is even more baffling. Putting aside that Plaintiffs are asking this Court to certify as "controlling" two "issues" of law to which they devoted (collectively) a single footnote in their Motion for Class Certification (*see* Dkt. 241 at 2-3 n.3), there are no reasons for certifying these questions at this point in the litigation. Even if the application of *Dynamex* to Plaintiffs' Section 2802 claim could be deemed a controlling issue of law—and Plaintiffs' counsel has argued the exact opposite position in *Lawson*—there are no substantial grounds for difference of opinion as to the correctness of this Court's ruling regarding the applicability of *Borello* to Plaintiffs' Section 2802 claim. Although they may wish the rule were otherwise, "[a] party's

strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference." *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citation and quotations omitted).  For these and the additional reasons discussed below, Plaintiffs' improper Ex Parte Motion should be denied.[2]

## ARGUMENT

## I.   PLAINTIFFS HAVE PRESENTED NO REASON FOR THIS COURT TO ISSUE A STAY

"A district court has discretionary power to stay proceedings in its own court under *Landis v. North American Co.*" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936)).  "In determining whether to grant a stay pursuant to *Landis*, courts in the Ninth Circuit weigh the 'competing interests which will be affected by the granting or refusal to grant a stay,' including 'the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Wilson v. Odwalla, Inc.*, Case No. CV 17-2763 DSF (FFMx), 2017 WL 3084278, at *4 (C.D. Cal. June 28, 2017) (quoting *Lockyer*, 398 F.3d at 1110) (quoting *CMAX, Inc. v.*

---

[2]     Plaintiffs' application not only fails on the merits but is an abuse of the ex parte process.  Plaintiffs have not shown that their "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." *Mission Power*, 488 F. Supp. at 492.  In fact, they have made no attempt whatsoever to establish their entitlement to ex parte relief.  *Id.* (ex parte application "must show why the moving party should be allowed to go to the head of the line and receive special treatment").  Nor can they.  If Plaintiffs believed that a regularly scheduled motion would have set the hearing date too close to trial, the proper procedure would have been to file an ex parte application to shorten time.  *MOBE, Ltd. v. Digital Altitude LLC*, Case No. CV 16-5708 PA (KSX), 2017 WL 3579492, at *3 (C.D. Cal. June 27, 2017) ("rather than raising their [substantive] argument in an ex parte application, Defendants could, and should, have filed a regularly noticed motion and an ex parte application to shorten time.").  But Plaintiffs chose instead to force the Court, and 7-Eleven, to respond to two important substantive issues in 48 hours.  In doing so, they imposed (not for the first time) "an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure." *In re Intermagnetics America, Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989).

*Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  None of these factors supports the issuance of a stay.

First, Plaintiffs have proffered no justification for issuing a stay, because their sole argument—that this Court must wait to see if the Ninth Circuit will conclude that claims under Section 2802 are governed by the ABC test—flies in the face of Plaintiffs' (and their counsel's) prior assertions and arguments.  Since November of 2018, when Plaintiffs' counsel filed her opening brief in the *Lawson* appeal (*see* Ninth Circuit Case No. 18-15386, Dkt. 28), Plaintiffs have filed four motions in this Court which asked this Court to decide whether *Borello* or the ABC test governed Plaintiffs' claim under Section 2802.[3]  *See, e.g.*, Dkt. 252 at 3 (where, in their Motion for Ruling on Outstanding Legal Issues (filed November 9, 2020), Plaintiffs stated that "this Court *must* resolve" whether *Borello* or the ABC test applies to their Section 2802 claim) (emphasis added)).  Not once did Plaintiffs cite *Lawson* or claim that its disposition would have some impact on this Court's ruling on this issue.[4]

Regardless, Plaintiffs' argument that the pendency of the appeal in *Lawson* somehow impacts the propriety of going to trial is ill-advised.  *Lawson* has not even been set for argument, and it is impossible to tell how long it will take the Ninth Circuit

---

[3]    *See, e.g*., Dkt. 209-1 at 4 (where, in the parties' joint motion to lift the stay, the parties specifically raised the applicability of the ABC test to Section 2802 claims and 7-Eleven's argument that the ABC test only applied to claims under the wage orders) (filed October 8, 2019); Dkt. 213 at 19 (where, in their motion for summary judgment, Plaintiffs stated that they "expect 7-Eleven to argue that *Dynamex* does not apply to their claim for expense reimbursement under Labor Code § 2802") (filed November 11, 2019); Dkt. 241 at 2-3 n.3 (where, in their motion for class certification, Plaintiffs asserted that "*Dynamex* applies to Plaintiffs' claims under Section 2802") (filed October 19, 2020).

[4]    *Lawson* was stayed pending the California Supreme Court's decision on the retroactivity of *Dynamex*. (*See* Clerk Order, *Lawson v. Grubhub, Inc.*, Case No. 18-15386 (9th Cir.) Dkt. 72; "Proceedings in this appeal are stayed pending a decision by the California Supreme Court on the question certified in 17-16096, *Vazquez v. Jan-Pro Franchising Int'l, Inc*., 2019 WL 4648399 (9th Cir. Sep. 24, 2019) (certifying the question whether *Dynamex Ops. W. Inc. v. Superior Court*, 416 P.3d 1 (Cal. 2018), applies retroactively."). The California Supreme Court heard argument on that issue on November 3, 2020, six days before Plaintiffs filed their Motion for Ruling on Outstanding Legal Issues.  *See* Judicial Council of California, Supreme Court of California    Case    Information    (Case    Number    S258191), (https://appellatecases.courtinfo.ca.gov/search.cfm?dist=0)

to issue a ruling once argument is heard (and for petitions for rehearing and/or rehearing *en banc* and, potentially, for certiorari to be resolved). "Generally, stays should not be indefinite in nature." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). As this Court previously recognized, "a stay that terminates "upon the 'resolution of [an] appeal' has an indefinite term because the Supreme Court could grant certiorari to review the appellate court's decision, or the appellate court could remand to the district court for further proceedings." *Wilson v. Odwalla, Inc.*, 2017 WL 3084278, at *4 (quoting *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) (district court erred in imposing a stay that terminated upon the resolution of an appeal because it was "indefinite" and "could remain in effect for a lengthy period of time, perhaps for years")); *accord Landis*, 299 U.S. at 255 ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). Because that is precisely the stay that Plaintiffs propose, their Motion necessarily fails.

Plaintiffs' Motion also fails because there is no reason to believe that *Lawson* will have any impact on this Court's determination. Initially, it is unlikely that *Lawson* will even consider the applicability of the ABC test to the plaintiffs' claims in that case, as the district court never weighed in on that issue. 2018 WL 6190316, at *7 (N.D. Cal. Nov. 28, 2018). "It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *accord Am. President Lines, Ltd. v. Int'l Longshore and Warehouse Union*, 721 F.3d 1147, 1157 (9th Cir. 2013). That rule holds particular force where, as here, the California Supreme Court issues potentially applicable precedent while an appeal is pending. In such cases, the Ninth Court has routinely remanded cases to allow the district court to first address the impact of the new decision. *See*, *e.g.*, *Rivac v. NDEX West, LLC*, Case No. 14-15194, 669 Fed. Appx. 352 (9th Cir. Oct. 6, 2016); *Luman v. Thompson*, Case No. 14-15385, 647 Fed. Appx. 804, at *808 (9th Cir. Apr. 8, 2016). That, of course, is exactly what it did in this case, when it vacated Judge Walter's grant

of 7-Eleven's motion for judgment on the pleadings and "le[ft] it to the district court in the first instance to address the extent to which *Dynamex* applies to the plaintiffs' claims, including the parties' contentions regarding retroactive application of *Dynamex*." (Dkt. 175 at 3, ¶ 2.)[5]

Yet even if the Ninth Circuit addresses this issue in *Lawson*, it is questionable whether its ruling would have any impact on this case—regardless of the result. On the one hand, the law (which Plaintiffs' application fails to acknowledge) is now settled that *Dynamex* only applies to claims under wage orders. As this Court observed in its Order denying Plaintiffs' motion for class certification, *Vazquez* emphasized (repeatedly) "that *Dynamex* applies only to *wage orders*." (Dkt. 275 at 9; emphasis in original.) It appears that every federal and state appellate court decision to address this issue has come to the same conclusion. (*See* Dkt. 251 at 7-8, collecting cases.) There is no sound reason for concluding that *Lawson* will disregard this precedent.

But even if it did, it is far from clear that such a determination would have any impact on whatever determinations this Court makes at trial. In deciding whether *Dynamex* would apply retroactively, *Vazquez* focused on the extent to which the Court's adoption of the ABC test constituted a change in existing law. Plaintiffs' counsel argued strenuously that it did *not* constitute a change. The ABC test, she claimed, "did not create new law, as it did not create new factors for determining employee status but, rather, was a distillation of the factors considered under the '*Borello* standard.'" (*See* Declaration of James F. Speyer ("Speyer Dec."), Exhibit A (which is excerpts from Petitioner's opening brief in the *Vazquez* appeal) at 22.) Specifically, counsel argued that all of the *Borello* factors were "now embodied, albeit in a re-organized manner, in the ABC test." (*Id.* at 23-25, arguing how Prongs A, B and C merely incorporated three of the factors from the *Borello* test.) If counsel is

---

[5]     Plaintiffs assert that this Court previously recognized the necessity of issuing a stay when it stayed this case pending the Ninth Circuit's issuance of its decision in *Vazquez*. (Motion at 7.) Plaintiffs fail to mention that this Court issued a stay because that is exactly what the Ninth Circuit suggested it do. (*See* Dkt. 175 at 3-4.)

correct, then a post-trial determination that the ABC test applies will not necessarily undo the results of trial, as this Court will be able to apply (perhaps with minimal supplementation) the findings it makes under the *Borello* test to the parallel prongs of the ABC test.  (*See* Speyer Dec., Exhibit B (which is excerpts from Plaintiffs' counsel's reply brief in *Vazquez*) at 20, where she notes that "The analysis under each 'ABC' prong is reflected in the multi-factor *Borello* test, which simply differently weighed all factors in conjunction with one another.")  *See also Vazquez*, 2021 WL 127201, at *6 ("the test we ultimately adopted in *Dynamex* drew on the factors articulated in *Borello*").  In fact, that is precisely what Plaintiffs' counsel argued should happen in *Lawson*:

> Finally, there is no merit to GrubHub's argument that due process necessitates a new trial if *Dynamex* applies to this case. All the pertinent facts were already fully developed at trial. The *Dynamex* factors overlap with three of the *Borello* factors but are just applied a different way under *Dynamex*. . . . This Court has all of the evidence before it and can now reverse the judgment below and order entry of judgment in Plaintiff's favor.

(*See* Speyer Dec., Exhibit C at 7.)

Second, the relative harms associated with a stay strongly counsel against imposing one.  "'[I]f there is even a fair possibility that the stay for which [the movant] prays will work damage to some one else,' the movant 'must make out a clear case of hardship or inequity in being required to go forward.'"  *Wilson*, 2017 WL 3084278, at *4 (quoting *Landis*, 299 U.S. at 255).  Here, the only hardships Plaintiffs claim they will suffer absent a stay is increased litigation costs.  But "[t]he Ninth Circuit has instructed that 'being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*.'"  *Id*. (quoting *Lockyer*, 398 F.3d at 1112).  On the other hand, 7-Eleven's potential exposure would increase dramatically during the pendency of an indefinite stay.  As "damages" in this case, Plaintiffs seeks "reimbursement" of all the expenses they incurred operating their franchises—including the royalties they paid to 7-Eleven, their franchise fees, their lease payments, and the monies they paid their own employees as wages.  (*See* Dkt.

286 at 10-11.)  In the case of just one franchisee—Plaintiff Maninder Lobana, who in 2016 earned $270,716 in net income across his three stores—those fees and expenses could total more than $1.6 million a year.  (*Id.* at 10.)[6]  For this reason too, Plaintiffs' Motion should be denied.

## II.   THERE IS NO REASON TO CERTIFY ANY QUESTIONS FOR INTERLOCUTORY REVIEW

### A.   The Applicable Standards

Section 1292(b) is an exception to the final judgment rule, where "litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals."  *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1025-26 (9th Cir. 1982) (en banc).  "[T]his section [is] to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation."  *Id.* at 1026; *see also U.S. v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959) ("[I]n passing [§ 1292(b)] Congress did not intend that the courts abandon the final judgment doctrine and embrace the principle of piecemeal appeals."); *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002) (Section 1292(b) "must be construed narrowly.").

"There are three statutory requirements for certifying an order for interlocutory appeal: (1) there must be a 'controlling question of law'; (2) there must be 'substantial ground[s] for difference of opinion' on the question; and (3) it must appear that 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'"  *Art Tobias v. City of Los Angeles*, Case No. CV17-1076 DSF (ASx), 2018 WL 6003556, at *1 (C.D. Cal. June 20, 2018) (Fischer, J.) (quoting 28 U.S.C. § 1292(b)) (citing *Cement Antitrust Litig.*, 673 F.2d at 1026).  As the party seeking certification, Plaintiffs "have the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the

---

[6]   7-Eleven does not concede that these are cognizable forms of relief under Section 2802.

entry of a final judgment." *Heaton v. Social Finance, Inc.*, Case No. 14-cv-05191-THE, 2016 WL 232433, at *2 (N.D. Cal. Jan. 20, 2016).  However, "[t]he decision to certify an order for interlocutory appeal is committed to the sound discretion of the district court." *U.S. v. Tenet Healthcare Corp.*, Case No. CV04-857 GAF(JTLX), 2004 WL 3030121, at *1 (C.D. Cal. Dec. 27, 2004) (citing *Swint v. Chambers County Comm'n*, 514 U.S. 35, 47 (1995)).  Accordingly, "[e]ven when all three statutory criteria are satisfied, district court judges have 'unfettered discretion' to deny certification." *Brizzee v. Fred Meyer Stores, Inc.*, Case No. CV 04–1566–ST, 2008 WL 426510, at *3 (D. Or. Feb. 13, 2008) (quoting *Ryan, Beck & Co., LLC v. Fakih*, 275 F. Supp. 2d 393, 396 (E.D.N.Y. 2003)).

Certification is inappropriate here because, as shown below, Plaintiffs have failed to carry their burden of satisfying each of the three requirements.

## B.   Plaintiffs Have Met None of The Requirements for Certification

First, Plaintiffs have not shown that the questions they have presented are controlling questions of law.  "Congress did not specify what it meant by 'controlling' for purposes of Section 1292(b)." *Heaton*, 2016 WL 232433, at *3.  However, the Ninth Circuit has explained that "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Cement Antitrust Litig.*, 673 F.2d at 1026. As noted above, even if the Ninth Circuit concluded on appeal that the ABC test (rather than *Borello*) applied to Plaintiffs' claim under Section 2802, it is doubtful such a ruling would materially impact the outcome of trial.  Plaintiffs' counsel has argued that "[t]he analysis under each 'ABC' prong is reflected in the multi-factor *Borello* test, which simply differently weighed all factors in conjunction with one another" (*see* Speyer Dec., Exhibit B at 20).  The California Supreme Court seems to have agreed with this view.  *See Vazquez*, 2021 WL 127201, at *6 ("the test we ultimately adopted in *Dynamex* drew on the factors articulated in *Borello*").  *If* that is correct, and *if* the Ninth Circuit concludes that this Court should have applied the ABC test, the Court can apply

the findings it makes in applying the *Borello* test to the corresponding prongs of the ABC test.  Any necessary supplementation of the record would likely be minimal.

Second, there are no substantial grounds for difference of opinion on the questions at issue. "To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch*, 611 F.3d at 633; *accord Ricketts v. CBS Corporations*, Case No. CV 19-03895-DSF (MRWx), 2020 WL 3124218, at *8 (C.D. Cal. Mar. 19, 2020) (Fischer, J.); *accord Rollins v. Dignity Health*, Case No. 13-CV-1450, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014) ("One of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed.").

There is no lack of clarity here.  The California appellate courts have unanimously held that *Dynamex* applies only to wage order claims (*see* 7-Eleven's Opposition to Plaintiffs' Motion for Class Certification, Dkt. 251 at 7-8 (collecting cases)), the Ninth Circuit has concluded that "*Dynamex* did not purport to replace the *Borello* standard in every instance where a worker must be classified as either an independent contractor or an employee for purposes of enforcing California's labor protections" (*Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 959 n.4 (9th Cir. 2018)), and the California Supreme Court has now twice made clear that its holding in *Dynamex* concerned the standard to be applied "in one specific context" only:  namely, "whether workers should be classified as employees or independent contractors *for purposes of California wage orders . . .*"  *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 913-14 (2018) (emphasis in original); *accord Vazquez*, 2021 WL 127201, at *3 ("this court's decision in *Dynamex* was based upon a determination concerning how the term 'suffer or permit to work' *in California wage orders* should be interpreted for purposes of distinguishing between employees who are covered by the wage orders and independent contractors who are not protected by such orders") (emphasis added)).  That Plaintiffs "disagree[] with the Court's application of that law is not a basis to

certify an interlocutory appeal." *Ricketts*, 2020 WL 3124218, at *8 (citing *Couch*, 611 F.3d at 633).

Plaintiffs' contention that there are substantial grounds for difference of opinion regarding this Court's determination that AB5 does not apply retroactively is likewise incorrect.  Initially, it is difficult to see how Plaintiffs can seriously contend that a question to which they devoted a single sentence in a footnote in their class certification motion should be deemed a controlling question of law on which there is substantial ground for difference of opinion.  (*See* Dkt. 241 at 2-3 n.3.)  If that question was in fact "controlling," Plaintiffs should at minimum have addressed it in their motion.  *Cf. Recycle for Change v. City of Oakland*, 856 F.3d 666, 673 (9th Cir. 2017) (holding that the plaintiff waived an argument that was "never raised . . . in its briefs, other than in a terse one-sentence footnote").  But this failure aside, there is no basis for concluding there are substantial grounds for a difference of opinion as to the retroactivity of AB5.

The California Supreme Court has long held that statutes will apply only prospectively unless the legislature clearly expresses an intent that the statute be applied retroactively.  *See Evangelatos v. Superior Ct.*, 44 Cal. 3d 1188, 1208 (1988) ("[There is a] common understanding that legislative provisions are presumed to operate prospectively, and that they should be so interpreted unless express language or clear and unavoidable implication negatives the presumption." (internal quotations omitted)).  There is nothing in AB5 which express such an intent, and Plaintiffs' assertion that there is some difference of opinion as to the statute's retroactive application is based on nothing.  To 7-Eleven's knowledge, the only courts to address the retroactivity of AB5 are this Court and *Olson v. California*, Case No. CV 19-10956-DMG (RAOx), 2020 WL 905572, at *12 (C.D. Cal. Feb. 10, 2020), which also correctly concluded that AB5 does *not* apply retroactively.  Plaintiffs' assertion that "at least one district court has disagreed with this Court on this issue" is inaccurate at best.  (Motion at 7.)  In fact, the case Plaintiffs cite in support of this claim—*James v. Uber Techs. Inc.*, Case No. 19-cv-06462-EMC, 2021 WL 254303, at *17 (N.D. Cal. Jan. 26,

2021)—did not even involve whether AB5 applied retroactively.  The only question before that Court was whether *Prop 22*, which is the ballot initiative that exempted app-based drivers from AB5, applied retroactively.  *Id*.[7]

Finally, an immediate appeal will not advance the ultimate issue in this case. "The third requirement for an interlocutory appeal—that the appeal must be likely to materially advance the termination of the litigation—is closely linked to the question of whether an issue of law is 'controlling,' because the district court should consider the effect of a reversal on the management of the case." *Meeker v. Belridge Water Storage Dist*., Case No. 1:05-CV-603-OWW, 2007 WL 781889, at *6 (E.D. Cal. Mar. 13, 2007) (citing *Cement Antitrust Litig*., 673 F.2d at 1026).  As noted above (*see* pp. 8-9, *supra*), it is unlikely an appeal will materially change the outcome of this case.

Because Plaintiffs have satisfied none of the requirements for interlocutory certification, their request should be denied.

---

[7]    The language in AB5 which Plaintiffs seem to believe supports retroactive application of that statute does no such thing.  While AB5 states that "the addition of [the ABC test] to this section of the Labor Code does not constitute a change in, but is declaratory of, existing law," the "existing law" at the time AB5 went into effect was *Dynamex*.  And as noted above, *Dynamex* applies only to Wage Order claims, not claims under the Labor Code. More fundamentally, the California Supreme Court has made clear that a legislative statement declaring that a statute does not change the law does not constitute the "express retroactivity provision" that is required for a statute to apply retroactively. *Evangelatos*, 44 Cal. 3d at 1209; *accord McClung v. Employment Dev. Dep't*, 34 Cal. 4th 467, 475 (2004).

1

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Ex Parte Motion Requesting Stay or, in the alternative, to Certify Interlocutory Order should be denied in its entirety.

Dated: February 12, 2021.            ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/James F. Speyer
    JAMES F. SPEYER
    MATTHEW D. GRANT
    Attorneys for Defendant 7-Eleven, Inc.

Dated: February 12, 2021.            DLA PIPER LLP (US)

By: /s/ Norman M. Leon
    NORMAN M. LEON
    MATTHEW J. IVERSON
    Attorneys for Defendant 7-Eleven, Inc.